THE SUN PRINTING AND PUBLISHING ASSOCIATION, Respondent, *v.* REMINGTON PAPER AND POWER COMPANY, INC., Appellant.

Contract — sale — contract for sale and delivery of paper over a period of months — price, and length of time price is to govern, subject to future agreement — provision for maximum price — agreement as to price insufficient without agreement as to time it is to remain in effect — buyer not holder of option to take at maximum price — vendor under no duty, in default of agreement, to accept reasonable term or to act as if successive terms were to expire each month — courts not at liberty to revise while professing to construe contract — pleading — allegation that maximum price was known to be fixed for period of contract should have been pleaded — where buyer couples demand with untenable condition failure to comply cannot give cause of action.

1. Where, by the terms of a contract for the purchase and sale of paper over a period of sixteen months, provision was made as to payment for the first four months but thereafter the price to be paid and the length of time during which such price was to govern were made subject to future agreement, the price, however, " in no event to be higher than the contract price for newsprint charged by the Canadian Export Paper Company to the large consumers," agreement as to price was insufficient without agreement as to the time during which such price was to govern.- The result so far as such length of time was concerned was nothing more than an agreement to agree and the vendor exercised its legal right in insisting that there was need of something more to make the contract binding.

2. A contention that the buyer should be viewed as the holder of an option and that in default of an agreement for a lower price he would have the privilege of calling for delivery in accordance with the price established as a maximum cannot be sustained. The ascertainment of the price does not dispense with the necessity for agreement in respect of the term during which the price is to apply.

3. An argument that there was no need of an agreement as to time unless the price to be paid was lower than the maximum cannot be sustained under the language of the contract. The Canadian price to-day might be less than the Canadian price to-morrow. Election by the buyer to proceed with performance at the price prevailing in one month would not bind it to proceed at the price prevailing in

another. Successive options to be exercised every month would thus be read into the contract. Nothing in the wording discloses the intention of the seller to place itself to that extent at the mercy of the buyer.

4. A contention that the vendor was under a duty, in default of an agreement, to accept a term that would be reasonable in view of the nature of the transaction and the practice of the business cannot be upheld. To hold it to such a standard is to make the contract over. The vendor reserved the privilege of doing its business in its own way, and did not undertake to conform to the practice and beliefs of others.

5. Nor was there a duty, in default of other agreement, to act as if the successive terms were to expire every month. The contract says they are to expire at such intervals as the agreement may prescribe. Courts are not at liberty to revise while professing to construe.

6. It is suggested that the price so charged may have been known to be one established for the year, so that fluctuation would be impossible. If that was its character, the complaint should so allege. The complaint leaves no escape from the conclusion that agreement in respect of time is as essential to a completed contract as agreement in respect of price. The agreement was not reached, and the defendant is not bound.

7. The question is not here whether the defendant would have failed in the fulfillment of its duty by an arbitrary refusal to reach any agreement as to time after notice from the plaintiff that it might make division of the terms in any way it pleased. No such notice was given so far as the complaint discloses. Plaintiff gave its own construction to the contract, fixed for itself the length of successive terms, and thereby coupled its demand with a condition which there was no duty to accept. There is no allegation of readiness and offer to proceed on any other basis. The condition being untenable, the failure to comply with it cannot give a cause of action.

*Sun Printing & Publishing Assn.* v. *Remington Paper & Power Co.*, 201 App. Div. 3, reversed.

(Argued March 1, 1923; decided April 17, 1923.)

Appeal, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered April 24, 1922, which reversed an order of Special Term denying a motion by plaintiff for judgment on the pleadings and granted said motion.

The following question was certified: " Does the

complaint state facts sufficient to constitute a cause of action? "

*Nathan L. Miller* for appellant. No exclusive option was given to respondent under the agreement. (2 Williston on Cont. § 601.) The language used in the agreement set forth in the complaint does not sufficiently define the price to create an enforcible obligation. (1 Williston on Cont. § 45; *United Press* v. *N. Y. Press Co.*, 164 N. Y. 406; *Varney* v. *Ditmars*, 217 N. Y. 234; *Harper* v. *Hassard*, 113 Mass. 187; *Peacock* v. *Cummings*, 46 Penn. St. 434; *Mayer* v. *McCreery*, 119 N. Y. 434.) In the absence of prices and terms agreed upon by the parties as provided for in the agreement, the court will not determine prices and terms for them. (1 Williston on Cont. § 92; *Miles* v. *Gery*, 14 Ves. 408.) The case at bar shows a contract with express contemplation of a further agreement to fix the price and the term and until such further agreement was made there could be no breach of obligation and no damages assessable. (*Mayer* v. *McCreery*, 119 N. Y. 434; *Penn Lubricating Co.* v. *Wilhelm*, 255 Penn. St. 390; *Petze* v. *Morse D. D. & R. Co.*, 125 App. Div. 267; 195 N. Y. 584; *Todd* v. *Gamble*, 148 N. Y. 382.)

*Archibald R. Watson, John M. Harrington* and *Ralph O. Willguss* for respondent. By virtue of the agreement in suit, the plaintiff acquired, for a valuable consideration, an option to purchase from the defendant 1,000 tons of newsprint paper per month during the year 1920 at a readily ascertainable price, namely, the co tract price for newsprint paper charged by the Canadian Export Paper Company to the large consumers. (*Cohen & Sons* v. *Lurie Woolen Co.*, 232 N. Y. 112; *Staples* v. *O' Neal*, 64 Minn. 27; *Carney* v. *Pendleton*, 139 App. Div. 152; *Bullock* v. *Cutting*, 155 App. Div. 825; *Lewis* v. *Bollinger*, 115 Misc. Rep. 221; *Matter of Hunter*, 1 Edw.

Ch. 1; *Hawralty* v. *Warren,* 18 N. J. Eq. 124; *Heyward* v. *Willmarth,* 87 App. Div. 125.)   The agreement in suit prescribes the criterion whereby the maximum price for paper deliverable during each month of the year 1920 was definitely ascertainable; and thereby the defendant irrevocably agreed upon a price to the extent of fixing the maximum price at which it would make deliveries during 1920.   (*Ehrnworth* v. *Stuhmer & Co.,* 229 N. Y. 210; *Ellis* v. *Miller,* 164 N. Y. 434; *G. N. Paper Co.* v. *N. Y. Times Co.,* 184 App. Div. 26; *McConnell* v. *Hughes,* 29 Wis. 537; *Vinton Petroleum Co.* v. *Sun Co.,* 230 Fed. Rep. 105; *Luetkemeyer Co.* v. *Murdock,* 267 Fed. Rep. 158.) Courts favor a construction that renders contracts operative rather than that which nullifies them; and in order to justify disregarding a promise on the ground of uncertainty, indefiniteness must reach the point where construction becomes futile.   (*Cohen & Sons* v. *Lurie Woolen Co.,* 232 N. Y. 112; *Ellis* v. *Miller,* 164 N. Y. 434; *Foley* v. *New York Mutual Benevolent Society,* 141 App. Div. 180, 186; *Ward* v. *Whitney,* 8 N. Y. 442, 446; *Bank of Montreal* v. *Recknagel,* 109 N. Y. 482; *United States Fidelity & G. Co.* v. *Board of Commissioners,* 145 Fed. Rep. 144; *Archibald* v. *Thomas,* 3 Cow. 284; *Minnesota Lumber Co.* v. *Coal Co.,* 160 Ill. 85, 94.)   The agreement in suit, when construed in accordance with its legal meaning, conferred upon the plaintiff the right, at its election, to demand of the defendant the delivery of 1,000 tons of newsprint paper per month during the year 1920 at a definitely ascertainable price, namely, the maximum price provided for in the agreement. (*Cohen & Sons* v. *Lurie Woolen Co.,* 232 N. Y. 112; *Luetkemeyer Co.* v. *Murdock,* 267 Fed. Rep. 158; *Vinton Petroleum Co.* v. *Sun Co.,* 230 Fed. Rep. 105; *St. Regis Paper Co.* v. *H. & H. Paper Co.,* 201 App. Div. 402; *Wood Co. Grocery Co.* v. *Frazer,* 204 Fed. Rep. 601; *Highlands C. & M. Co.* v. *Matthews,* 76 N. Y. 145; *De Grasse Paper Co.* v. *Northern N. Y. Coal Co.,* 190 App.

Div. 227; *Southern Pub. Assn.* v. *Clements Paper Co.*, 139 Tenn. 429; *Farquhar Co.* v. *N. R. Mineral Co.*, 87 App. Div. 329.)   The plaintiff having, in the exercise of its option, duly demanded the delivery of the paper, the parties thereupon became mutually bound, the defendant to deliver, and the plaintiff to pay for, the paper at the maximum price provided for in the agreement.   (*Conley Camera Co.* v. *Multiscope & Film Co.*, 216 Fed. Rep. 892; *Hoogendorn* v. *Daniel*, 178 Fed. Rep. 765; *Grossman* v. *Schenker*, 206 N. Y. 466; *O'Brien* v. *Bolan*, 166 Mass. 481; *Heyward* v. *Willmarth*, 87 App. Div. 125; *Wood County Grocer Co.* v. *Frazer*, 284 Fed. Rep. 691.)

Cardozo, J.   Plaintiff agreed to buy and defendant to sell 1,000 tons of paper per month during the months of September, 1919, to December, 1920, inclusive, 16,000 tons in all.   Sizes and quality were adequately described.   Payment was to be made on the 20th of each month for all paper shipped the previous month. The price for shipments in September, 1919, was to be $3.73¾ per 100 pounds, and for shipments in October, November and December, 1919, $4 per 100 pounds. " For the balance of the period of this agreement the price of the paper and length of terms for which such price shall apply shall be agreed upon by and between the parties hereto fifteen days prior to the expiration of each period for which the price and length of term thereof have been previously agreed upon, said price in no event to be higher than the contract price for newsprint charged by the Canadian Export Paper Company to the large consumers, the seller to receive the benefit of any differentials in freight rates."

Between September, 1919, and December of that year, inclusive, shipments were made and paid for as required by the contract.   The time then arrived when there was to be an agreement upon a new price and upon the term of its duration.   The defendant in advance of that time

gave notice that the contract was imperfect, and disclaimed for the future an obligation to deliver. Upon this, the plaintiff took the ground that the price was to be ascertained by resort to an established standard. It made demand that during each month of 1920 the defendant deliver 1,000 tons of paper at the contract price for newsprint charged by the Canadian Export Paper Company to the large consumers, the defendant to receive the benefit of any differentials in freight rates. The demand was renewed month by month till the expiration of the year. This action has been brought to recover the ensuing damage.

Seller and buyer left two subjects to be settled in the middle of December and at unstated intervals thereafter. One was the price to be paid. The other was the length of time during which such price was to govern. Agreement as to the one was insufficient without agreement as to the other. If price and nothing more had been left open for adjustment, there might be force in the contention that the buyer would be viewed, in the light of later provisions, as the holder of an option (*Cohen & Sons* v. *Lurie Woolen Co.,* 232 N. Y. 112). This would mean that in default of an agreement for a lower price, the plaintiff would have the privilege of calling for delivery in accordance with a price established as a maximum. The price to be agreed upon might be less, but could not be more than " the contract price for newsprint charged by the Canadian Export Paper Company to the large consumers." The difficulty is, however, that ascertainment of this price does not dispense with the necessity for agreement in respect of the term during which the price is to apply. Agreement upon a maximum payable this month or to-day is not the same as an agreement that it shall continue to be payable next month or to-morrow. Seller and buyer understood that the price to be fixed in December for a term to be agreed upon, would not be more than the price then

charged by the Canadian Export Paper Company to the large consumers. They did not understand that if during the term so established the price charged by the Canadian Export Paper Company was changed, the price payable to the seller would fluctuate accordingly. This was conceded by plaintiff's counsel on the argument before us. The seller was to receive no more during the running of the prescribed term, though the Canadian maximum was raised. The buyer was to pay no less during that term, though the maximum was lowered. In brief, the standard was to be applied at the beginning of the successive terms, but once applied was to be maintained until the term should have expired. While the term was unknown, the contract was inchoate.

The argument is made that there was no need of an agreement as to time unless the price to be paid was lower than the maximum. We find no evidence of this intention in the language of the contract. The result would then be that the defendant would never know where it stood. The plaintiff was under no duty to accept the Canadian standard. It does not assert that it was. What it asserts is that the contract amounted to the concession of an option. Without an agreement as to time, however, there would be not one option, but a dozen. The Canadian price to-day might be less than the Canadian price to-morrow. Election by the buyer to proceed with performance at the price prevailing in one month would not bind it to proceed at the price prevailing in another. Successive options to be exercised every month would thus be read into the contract. Nothing in the wording discloses the intention of the seller to place itself to that extent at the mercy of the buyer. Even if, however, we were to interpolate the restriction that the option, if exercised at all, must be exercised only once, and for the entire quantity permitted, the difficulty would not be ended. Market prices in 1920 happened to rise. The importance of the time

element becomes apparent when we ask ourselves what the seller's position would be if they had happened to fall. Without an agreement as to time, the maximum would be lowered from one shipment to another with every reduction of the standard. With such an agreement, on the other hand, there would be stability and certainty. The parties attempted to guard against the contingency of failing to come together as to price. They did not guard against the contingency of failing to come together as to time. Very likely they thought the latter contingency so remote that it could safely be disregarded. In any event, whether through design or through inadvertence, they left the gap unfilled. The result was nothing more than " an agreement to agree " (*St. Regis Paper Co.* v. *Hubbs & Hastings Paper Co.*, 235 N. Y. 30, 36). Defendant " exercised its legal right " when it insisted that there was need of something more (*St. Regis Paper Co.* v. *Hubbs & Hastings Paper Co., supra;* 1 Williston Contracts, § 45). The right is not affected by our appraisal of the motive (*Mayer* v. *McCreery,* 119 N. Y. 434, 440).

We are told that the defendant was under a duty, in default of an agreement, to accept a term that would be reasonable in view of the nature of the transaction and the practice of the business. To hold it to such a standard is to make the contract over. The defendant reserved the privilege of doing its business in its own way, and did not undertake to conform to the practice and beliefs of others (*United Press* v. *N. Y. Press Co.,* 164 N. Y. 406, 413). We are told again that there was a duty, in default of other agreement, to act as if the successive terms were to expire every month. The contract says they are to expire at such intervals as the agreement may prescribe. There is need, it is true, of no high degree of ingenuity to show how the parties, with little change of language, could have framed a form of contract to which obligation would attach. The

difficulty is that they framed another.  We are not at liberty to revise while professing to construe.

We do not ignore the allegation of the complaint that the contract price charged by the Canadian Export Paper Company to the large consumers "constituted a definite and well defined standard of price that was readily ascertainable."  The suggestion is made by members of the court that the price so charged may have been known to be one established for the year, so that fluctuation would be impossible.  If that was its character, the complaint should so allege.  The writing signed by the parties calls for an agreement as to time.  The complaint concedes that no such agreement has been made. The result, *prima facie,* is the failure of the contract. In that situation, the pleader has the burden of setting forth the extrinsic circumstances, if there are any, that make agreement unimportant.  There is significance, moreover, in the attitude of counsel.  No point is made in brief or in argument that the Canadian price, when once established, is constant through the year.  On the contrary, there is at least a tacit assumption that it varies with the market.  The buyer acted on the same assumption when it renewed the demand from month to month, making tender of performance at the prices then prevailing.  If we misconceive the course of dealing, the plaintiff by amendment of its pleading can correct our misconception.  The complaint as it comes before us leaves no escape from the conclusion that agreement in respect of time is as essential to a completed contract as agreement in respect of price.  The agreement was not reached, and the defendant is not bound.

The question is not here whether the defendant would have failed in the fulfilment of its duty by an arbitrary refusal to reach any agreement as to time after notice from the plaintiff that it might make division of the terms in any way it pleased.  No such notice was given so far as the complaint discloses.  The action is not

based upon a refusal to treat with the defendant and attempt to arrive at an agreement. Whether any such theory of liability would be tenable we need not now inquire. Even if the plaintiff might have stood upon the defendant's denial of obligation as amounting to such a refusal, it did not elect to do so. Instead, it gave its own construction to the contract, fixed for itself the length of the successive terms, and thereby coupled its demand with a condition which there was no duty to accept (*Rubber Trading Co.* v. *Manhattan R. Mfg. Co.,* 221 N. Y. 120; 3 Williston Contracts, § 1334). We find no allegation of readiness and offer to proceed on any other basis. The condition being untenable, the failure to comply with it cannot give a cause of action.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in the Appellate Division and in this court, and the question certified answered in the negative.

CRANE, J. (dissenting). I cannot take the view of this contract that has been adopted by the majority. The parties to this transaction beyond question thought they were making a contract for the purchase and sale of 16,000 tons rolls news print. The contract was upon a form used by the defendant in its business, and we must suppose that it was intended to be what it states to be, and not a trick or device to defraud merchants. It begins by saying that in consideration of the mutual covenants and agreements herein set forth the Remington Paper and Power Company, Incorporated, of Watertown, state of New York, hereinafter called the seller, agrees to sell and hereby does sell and the Sun Printing and Publishing Association of New York city, state of New York, hereinafter called the purchaser, agrees to buy and pay for and hereby does buy the following paper, 16,000 tons rolls news print. The sizes are then given. Shipment is to be at the rate of 1,000 tons per month to Decem-

ber, 1920, inclusive. There are details under the headings consignee, specifications, price and delivery, terms, miscellaneous, cores, claims, contingencies, cancellations.

Under the head of miscellaneous comes the following: " The price agreed upon between the parties hereto, for all papers shipped during the month of September, 1919, shall be $3.73¾ per hundred pounds gross weight of rolls on board cars at mills.

" The price agreed upon between the parties hereto for all shipments made during the months of October, November and December, 1919, shall be $4.00 per hundred pounds gross weight of rolls on board cars at mills.

" For the balance of the period of this agreement the price of the paper and length of terms for which such price shall apply shall be agreed upon by and between the parties hereto fifteen days prior to the expiration of each period for which the price and length of term thereof has been previously agreed upon, said price in no event to be higher than the contract price for newsprint charged by the Canadian Export Paper Company to the large consumers, the seller to receive the benefit of any differentials in freight rates.

" It is understood and agreed by the parties hereto that the tonnage specified herein is for use in the printing and publication of the various editions of the Daily and Sunday New York Sun, and any variation from this will be considered a breach of contract."

After the deliveries for September, October, November and December, 1919, the defendant refused to fix any price for the deliveries during the subsequent months, and refused to deliver any more paper. It has taken the position that this document was no contract, that it meant nothing, that it was formally. executed for the purpose of permitting the defendant to furnish paper or not, as it pleased.

Surely these parties must have had in mind that some binding agreement was made for the sale and delivery of

16,000 tons rolls of paper, and that the instrument contained all the elements necessary to make a binding contract. It is a strain upon reason to imagine the paper house, the Remington Paper and Power Company, Incorporated, and the Sun Printing and Publishing Association, formally executing a contract drawn up upon the defendant's prepared form which was useless and amounted to nothing. We must, at least, start the examination of this agreement by believing that these intelligent parties intended to make a binding contract. If this be so, the court should spell out a binding contract, if it be possible.

I not only think it possible, but think the paper itself clearly states a contract recognized under all the rules at law. It is said that the one essential element of price is lacking; that the provision above quoted is an agreement to agree to a price, and that the defendant had the privilege of agreeing or not, as it pleased; that if it failed to agree to a price there was no standard by which to measure the amount the plaintiff would have to pay. The contract does state, however, just this very thing. Fifteen days before the first of January, 1920, the parties were to agree upon the price of the paper to be delivered thereafter, and the length of the period for which such price should apply. However, the price to be fixed was not " to be higher than the contract price for newsprint charged by the Canadian Export Paper Company to large consumers." Here surely was something definite. The 15th day of December arrived. The defendant refused to deliver. At that time there was a price for newsprint charged by the Canadian Export Paper Company. If the plaintiff offered to pay this price, which was the highest price the defendant could demand, the defendant was bound to deliver. This seems to be very clear.

But while all agree that the price on the 15th day of December could be fixed, the further objection is made that the period during which that price should continue was not agreed upon. There are many answers to this.

We have reason to believe that the parties supposed they were making a binding contract; that they had fixed the terms by which one was required to take and the other to deliver; that the Canadian Export Paper Company price was to be the highest that could be charged in any event. These things being so, the court should be very reluctant to permit a defendant to avoid its contract. (*Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205.)

On the 15th of the fourth month, the time when the price was to be fixed for subsequent deliveries, there was a price charged by the Canadian Export Paper Company to large consumers. As the defendant failed to agree upon a price, made no attempt to agree upon a price and deliberately broke its contract, it could readily be held to deliver the rest of the paper, a thousand rolls a month, at this Canadian price. There is nothing in the complaint which indicates that this is a fluctuating price, or that the price of paper as it was on December 15th was not the same for the remaining twelve months.

Or we can deal with this contract, month by month. The deliveries were to be made 1,000 tons per month. On December 15th 1,000 tons could have been demanded. The price charged by the Canadian Export Paper Company on the 15th of each month on and after December 15th, 1919, would be the price for the thousand ton delivery for that month.

Or again, the word as used in the miscellaneous provision quoted is not " price," but " contract price "— " in no event to be higher than the contract price." Contract implies a term or period and if the evidence should show that the Canadian contract price was for a certain period of weeks or months, then this period could be applied to the contract in question.

Failing any other alternative, the law should do here what it has done in so many other cases, apply the rule of reason and compel parties to contract in the light of fair dealing. It could hold this defendant to deliver

its paper as it agreed to do, and take for a price the Canadian Export Paper Company contract price for a period which is reasonable under all the circumstances and conditions as applied in the paper trade.

To let this defendant escape from its formal obligations when any one of these rulings as applied to this contract would give a practical and just result is to give the sanction of law to a deliberate breach. (*Wood* v. *Duff-Gordon,* 222 N. Y. 88; *Moran* v. *Standard Oil Co.,* 211 N. Y. 187; *United States Rubber Co.* v. *Silverstein,* 229 N. Y. 168.)

For these reasons I am for the affirmance of the courts below.

HISCOCK, Ch. J., POUND, MCLAUGHLIN and ANDREWS, JJ., concur with CARDOZO, J.; CRANE, J., reads dissenting opinion with which HOGAN, J., concurs.

Order reversed, etc.