**RAILWAY SUPPLY & MFG. CO.,**
Plaintiff,

v.

**SAFIE BROS. CO., Inc., Defendant.**

United States District Court
S. D. New York.
Feb. 3, 1962.

Brush & Bloch, New York City, for plaintiff. Monroe P. Bloch, Jac M. Wolff, New York City, of counsel.

Rubin, Rubin, Pearlman & Weinberg, New York City, for defendant. Max Grossberg, New York City, of counsel.

DAWSON, District Judge.

This is a motion brought by the defendant for summary judgment pursuant to Rule 56 of the Rules of Civil Procedure, 28 U.S.C.A. on the ground that defendant is entitled to judgment as a matter of law. The action is one for breach of contract.

The following facts exist without substantial controversy: The plaintiff and defendant entered into a written agreement dated December 6, 1955, wherein the defendant promised and agreed to sell and deliver to plaintiff the entire accumulation and production for and during the year 1956 of certain waste material of its North Carolina cotton mill. The sale was to be at specified prices, subject to quarterly revision. On May 9, 1956 defendant gave notice to the plaintiff that it wished to revise the prices pursuant to the revision clause, but the plaintiff declined to negotiate any revision of price. The defendant thereafter continued to sell and deliver its accumulation and production until July 3, 1956, when the defendant notified the plaintiff that it had no intention to sell or deliver any more of its accumulation and production to the plaintiff, and that it intended to sell and deliver the same to a third party. The plaintiff subsequently brought this suit for breach of contract.

The dispute between the parties arises out of differing interpretations of the

price revision provision of the contract of December 6, 1955. This contract, a simple one page document, confirmed the purchase from defendant of "your entire accumulation and production for the year 1956 at the following grades and at the following prices:" (At this point the contract set forth a schedule of seventeen different items of cotton waste and their price per pound). At the foot of this schedule there appeared the following clause:

"The prices in this contract are subject to revision each quarter, provided this revision is called for by either party by the 15th of the month prior to the beginning of each new quarter."

The words "subject to revision" are not defined in the contract. This contract is a businessman's agreement not drawn with the precision which a lawyer would use in drawing an agreement. Looking at the relationship between the parties and the language, it would seem clear that the words "subject to revision" merely gave an option to either party to call for a revision of prices. If it was intended that when a party called for revision of prices, if his proposal was not accepted, the contract would be terminated, it would seem that even businessmen would so provide in the agreement. They did not so provide. There is no indication in the agreement that a calling for revision of prices meant that the contract would thereby be terminated, or that it would be terminated if the other party did not agree to the revision suggested.

It is the contention of the defendant that the above quoted clause pertaining to price revision gave to the contract the character of an agreement to agree, thus rendering it entirely unenforceable after the first quarter of 1956 unless the parties were in agreement as to prices. The plaintiff contends, on the other hand, that the clause pertaining to price revision, while unenforceable in itself, was not of such nature as to vitiate the entire contract and that the prices set forth in the schedule continued to be binding for the entire duration of the contract since the parties failed to agree upon any revision.

It would seem that the plaintiff's interpretation of the contractual provision is the correct one. The contract by its terms covered the "entire accumulation and production for the year 1956." The prices of the materials being sold were specifically set forth in the schedule. This was not a contract where the price was left open for future negotiation. That was the situation in the cases relied on by the defendant, St. Regis Paper Co. v. Hubbs & Hastings Paper Co., 235 N.Y. 30, 138 N.E. 495 (1923) and Sun Printing & Pub. Ass'n v. Remington Paper & Power Co., 235 N.Y. 338, 139 N.E. 470 (1923). In those two cases there was no general price arrangement subject to revision and no prices whatsoever were agreed upon for the periods in question. In this case the prices set forth in the schedule were applicable for the entire year unless revised. The prices in the schedule were not those for the first quarter of the year to be then continued or modified as the parties might mutually agree. It is true that prior to the beginning of each new quarter either party could call for revision, at which time the prices became "subject to revision." But a "revision" could not be made unilaterally, and the provision in question here did not require the cancellation of the contract if a revision of prices was not agreed upon. In sum, the clause pertaining to price revision permitted the parties to mutually agree upon new terms for subsequent quarters of the year, but their failure to do so did not terminate the contract. See Outlet Embroidery Co. v. Derwent Mills Ltd., 254 N.Y. 179, 172 N.E. 462, 70 A.L.R. 1440 (1939). In the absence of mutual agreement the prices set forth in the schedule continued to be applicable for the entire year 1956 and the contract remained valid for that entire year.

The defendant's motion for summary judgment is denied. So ordered.