**RAILWAY SUPPLY & MFG. CO.,**
**Plaintiff,**

v.

**SAFIE BROS. CO., Inc., Defendant.**

United States District Court
S. D. New York.

April 16, 1962.

Brush & Bloch, New York City, Monroe P. Bloch, New York City, of counsel, for plaintiff.

Rubin, Rubin, Pearlman & Weinberg, New York City, Herschel M. Weinberg, Max Grossberg, New York City, of counsel, for defendant.

WEINFELD, District Judge.

This is an action for breach of contract for the sale of goods in which jurisdiction rests on diversity of citizenship. The plaintiff moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., for summary judgment on the issue of liability and for an assessment of damages.

The plaintiff is engaged in the business of buying, selling and converting waste material from cotton mills. The defendant is the owner of a mill located at Rockingham, North Carolina. On December 6, 1955, the parties entered into an agreement under which the defendant agreed to sell and deliver to plaintiff all the accumulation and production of waste material of its Rockingham plant for the entire year 1956. The contract contained a schedule covering seventeen different items of cotton waste and a specific price per pound. It provided that the prices were "subject to revision each quarter, provided this revision is called for by either party by the 15th of the month prior to the beginning of each new quarter." For the first two quarters the defendant made delivery of its entire output and plaintiff paid therefor at the prices fixed in the written agreement. However, before the third quarter, on May 9, 1956, the defendant gave notice in writing of its request for an increase in prices; the plaintiff did not comply with the request by offering higher prices and no new set of prices was agreed upon. On July 3, 1956 the defendant notified the plaintiff that the waste material for the second half of 1956 would be sold and delivered to a third party, a former asso-

ciate of plaintiff. The foregoing essential facts are substantially admitted.

The defendant heretofore moved for summary judgment in its favor on the ground that the revision clause of the agreement of December 6, 1955 was in fact an agreement to agree, or the expression of an intention to come to a new agreement in the future and, as such, not binding on either party. In a reasoned opinion Judge Dawson rejected this contention, upheld the validity of the agreement and denied the defendant's motion for summary judgment. He held: "In the absence of mutual agreement the prices set forth in the schedule continued to be applicable for the entire year 1956 and the contract remained valid for that entire year." Railway Supply & Mfg. Co. v. Safie Bros. Co., 201 F.Supp. 690, 691 (S.D.N.Y.1962).

■ The defendant's opposition to the plaintiff's motion for summary judgment is mainly a restatement of its position on its own earlier motion for summary judgment. It is unnecessary to decide whether Judge Dawson's ruling that the contract was valid and enforceable constitutes "the law of the case,"[1] since, in any event, I reach the same conclusion. The December 6, 1955 agreement was valid and bound the defendant to continue delivery during the third and fourth quarters of 1956 at the specified schedule of prices unless the parties mutually agreed to modify them.

■ The only argument by the defendant, not raised on its motion before Judge Dawson, is that the plaintiff breached the revision provision by failing to negotiate new prices. First, the contract does not provide for negotiation of new prices and that upon refusal the agreement shall terminate. If the par-

ties had intended that after the first quarter the contract was to be terminated for refusal to negotiate, or upon failure to reach an agreement on new prices for each succeeding quarter, they could readily have so provided. Agreements such as these, under New York law,[2] "are to be read as businessmen would read them, and only as a last resort are to be thrown out altogether as meaningless futilities."[3] Further, defendant only notified plaintiff generally that it wanted an increase in prices, proposing no new prices itself; certainly, there cannot be read into the simple revision-upon-notice clause a requirement—as defendant contends—that mere notice by it placed upon plaintiff a burden, at peril of being held in breach, to come forth with a new price list.

In any event, the merit of the contention that plaintiff breached the contract by refusing to negotiate new prices is clearly irrelevant in the context of what actually happened in this case. The defendant for a reason wholly unrelated to price changes refused to make any delivery after June 30, 1956 and so indicated its intended course. Defendant wrote to plaintiff on April 18, 1956, prior to its revision request, asking to be relieved of the contract because it preferred to do business with an officer no longer associated with plaintiff and who was then in the market for cotton waste himself. In the light of its request to be relieved of its obligation under the agreement, the perfunctory May 9th request for increased prices was a seizure upon the "revision" clause to call the whole thing off.[4] Defendant itself made no good faith effort to negotiate for revision of prices, but on July 3, 1956 wrote plaintiff that shipments of the waste material for the second half of the year, the bal-

---

1. Hertz v. Graham, 292 F.2d 443, 447 (2d Cir.), cert. denied, 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192 (1961); Dictograph Products v. Sonotone Corp., 230 F.2d 131 (2d Cir.), petition for cert. dismissed per stipulation, 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed.2d 82 (1956); but see TCF Film Corp. v. Gourley, 240 F.2d 711, 713 (3d Cir. 1957).

2. The parties have assumed that New York law is applicable.

3. Outlet Embroidery v. Derwent Mills, 254 N.Y. 179, 183, 172 N.E. 462, 463, 70 A.L.R. 1440 (1930).

4. Compare May Metropolitan Corp. v. May Oil Burner Corp., 290 N.Y. 260, 265, 49 N.E.2d 13 (1943).

ance of the term of the contract, would not be made to it, but to the former associate of the plaintiff. In fact, according to the deposition of defendant's treasurer, an order to the Rockingham plant manager stopping shipments at the end of June was issued by him as early as April, 1956—several weeks before the plant manager's notice to plaintiff of a request for increased prices.[5] Under these circumstances any negotiation of new prices for goods which were never to be delivered would have been idle ceremony. The law does not require the plaintiff to engage in such futility as the condition of retaining its right to enforce its claim for the defendant's admitted and unjustified refusal to perform.[6] It follows that plaintiff is entitled to an order granting summary judgment in its favor and directing an assessment of damages.

Submit order accordingly.

---

5. Deposition of Joseph M. Safie, Oct. 9, 1958, Dec. 3, 1958, Feb. 10, 1959, and Dec. 19, 1960, pp. 43–44, 49–50.

6. Restatement, Contracts § 306, comment a (1932)