[994 NYS2d 266]

LaSalle Bank N.A., as Trustee for Merrill Lynch First Franklin Mortgage Loan Trust 2007-4 Mortgage Loan Asset-Backed Certificates Series 2007-4, Plaintiff, v Brian Dono et al., Defendants.

Supreme Court, Suffolk County, August 12, 2014

### APPEARANCES OF COUNSEL

*Long Island Housing Services Inc.*, Bohemia (*John Batanchiev* and *Ian S. Wilder* of counsel), for Brian Dono, defendant.

*Davidson Fink LLP*, Rochester (*Larry T. Powell* of counsel), for plaintiff.

### OPINION OF THE COURT

JEFFREY ARLEN SPINNER, J.

Plaintiff, through predecessor counsel Steven J. Baum P.C., commenced this action pursuant to Real Property Actions and Proceedings Law article 13, claiming the foreclosure of a first mortgage which encumbers residential real property located at 77 Winchester Drive, Lindenhurst, Town of Babylon, Suffolk County, New York. In its verified complaint, the plaintiff alleges that it is the owner and holder of an adjustable rate note in the principal amount of $420,000 which is secured by a mortgage, recorded with the Suffolk County Clerk. Plaintiff demands foreclosure of the mortgage together with recovery of interest, costs, disbursements, attorney's fees and a deficiency judgment. Defendant does not deny the default, instead freely admitting that the course of events which brings these parties before the court occurred as a direct result of his incarceration. The court recalls that prior to defendant's discharge from custody, his wife appeared at the settlement conferences in the exercise of a vain but honest attempt to reach an amicable disposition herein.

In compliance with the provisions of CPLR 3408, a series of mandatory settlement conferences were held, upon which there were no less than 24 appearances before the court. Indeed, as early as March 16, 2009, the court's records reflect that defendant requested provision of the appropriate settlement conference package, apparently evincing his intention to attempt to reach an amicable resolution herein.

Defendant, through counsel, now moves this court for an order tolling interest and other costs on the mortgage debt, asserting that plaintiff has failed to negotiate in good faith, as mandated by CPLR 3408. Not surprisingly, plaintiff vociferously opposes defendant's application, insisting that it has acted in good faith throughout the process and that there exists no basis for defendant's application.

In support of its application, defendant submits the affirmations of John Batanchiev Esq. and Ian S. Wilder Esq. together with the affidavit of Brian Dono, supported by a number of exhibits as well as a reply memorandum of law. Plaintiff has submitted the affirmation of Larry T. Powell Esq. together with a surreply affirmation but has not seen fit to provide proof from a party with actual knowledge. The court is constrained to note that in the particular matter that is sub judice, plaintiff has failed to appear through a representative during the mandatory settlement conference process, despite having been ordered to do so by the undersigned.

In essence, defendant asserts, without any factual or admissible contravention by plaintiff, that since at least October 1, 2010, he has fully complied with each and every document request received from plaintiff's various loan servicers, each of whom, it is claimed, have acted in bad faith. Defendant claims, again without contraversion by plaintiff, that the real property that secures the loan has an approximate fair market value of $317,265 juxtaposed against a claimed balance due of $676,361.45. Defendant further states, once again without opposition, that plaintiff has unreasonably and wrongfully delayed these proceedings by interposing multiple and duplicitous document demands; that plaintiff and its servicers have willfully failed to comply with the applicable Home Affordable Modification Program (HAMP) guidelines, to which its initial servicer was subject, by offering a "modified" payment equal to 70% of his gross monthly income while knowing that the "cap" was set at 31% within those guidelines; that plaintiff surreptitiously conveyed the loan to a different, non-HAMP servicer so as to avoid being subject to the HAMP guidelines and which also caused the process to start anew; that plaintiff failed and neglected to provide HAMP-compliant denials; that plaintiff refused to consider defendant's reasonable counter-offer which fell well within HAMP guidelines; and finally, that plaintiff has refused to negotiate, instead propounding a "take it or leave it" modification which contained unconscionable terms including a waiver of defenses, counterclaims and setoff together with a reverter clause in the nature of a penalty. While defendant's sworn averments are supported by efficacious documentation together with affirmations from two respected attorneys who possess actual and personal knowledge of this particular matter (both attorneys have appeared before the undersigned on multiple occasions with respect to this matter), plaintiff has

failed to submit any evidence whatsoever in opposition, instead relying upon counsel's cavalier affirmation.

Plaintiff's opposition, distilled to its essence, consists solely of counsel's stentorian albeit factually unsupported assertions that inasmuch as a mortgage is a contract, the court may neither interfere with nor modify its terms; that since this proceeding is one sounding in equity this court is bound to comply with the rules of equity (and hence must rule in plaintiff's favor), citing *IndyMac Bank, F.S.B. v Yano-Horoski* (78 AD3d 895 [2d Dept 2010]) and *Bank of Am., N.A. v Lucido* (114 AD3d 714 [2d Dept 2014]), among others; that the court may not force a settlement upon the parties; and finally, counsel refers this court to the decision of a court of coordinate jurisdiction in such a manner as to strongly suggest that said opinion is controlling herein. Counsel urges this court to summarily deny the relief sought by defendant, stating that plaintiff has asked for nothing more than that the note and mortgage be strictly enforced according to their terms and, further, that it is defendant who has acted in bad faith. None of these meretricious assertions are supported by so much as a scintilla of evidence and, indeed, they are both factually inaccurate and decidedly fallacious. Counsel fails and neglects to substantively address any of defendant's efficacious claims, instead stridently admonishing this court that it may not act in a manner that is based upon sympathy, citing *Graf v Hope Bldg. Corp.* (254 NY 1 [1930]), and further strongly admonishing this court that in view of the clear language of the note and mortgage, that this court is "not at liberty to revise while professing to construe," citing *Sun Print. & Publ. Assn. v Remington Paper & Power Co.* (235 NY 338, 346 [1923]).

Interestingly, the affirmation of plaintiff's counsel does not state the basis upon which his bald and unsupported statements are based, other than his position as an associate with plaintiff's successor counsel. Again, the opposition submitted is quite conspicuous for its complete absence of any affidavit of a party with actual knowledge herein and as counsel surely must be aware, an affirmation of counsel, absent proof of actual firsthand knowledge, is wholly devoid of probative value (*Barnet v Horwitz*, 278 App Div 700 [2d Dept 1951]).

The decision in this matter is necessarily based upon and is controlled by the provisions of CPLR 3408, which was promulgated by the legislature in response to the mortgage foreclosure crisis that was (and is) facing New York homeowners. The statute, remedial in nature, was passed in 2008 (L 2008, ch 472)

and was substantially amended late in 2009 (L 2009, ch 507). The relevant portions for purposes of this decision are CPLR 3408 (a) and (f), which read, in pertinent part, as follows:

"(a) In any residential foreclosure action involving a home loan . . . in which the defendant is a resident of the property subject to foreclosure . . . the court shall hold a mandatory conference . . . for the purpose of holding settlement discussions pertaining to the relative rights and obligations of the parties under the mortgage loan documents, including, but not limited to determining whether the parties can reach a mutually agreeable resolution to help the defendant avoid losing his or her home, and evaluating the potential for a resolution in which payment schedules or amounts may be modified or other workout options may be agreed to, and for whatever other purposes the court deems appropriate . . .

"(f) Both the plaintiff and defendant shall negotiate in good faith to reach a mutually agreeable resolution, including a loan modification, if possible."

While the express language of CPLR 3408 appears clear on its face, the term "good faith" is nowhere defined in the statute. Too, the legislative history fails to reveal any clue at all as to the definition of this term. Instead, working within a statutory vacuum, various trial courts have assiduously attempted to give real meaning to this concept in the absence of any definition or other guidance. Both defendant and plaintiff have cited a plethora of case law in their respective papers, none of which is controlling, in view of a new decision from our Appellate Division, which was released subsequent to the submission of the instant application.

Instead, this court finds itself inexorably guided by the decision in the matter of *US Bank N.A. v Sarmiento* (121 AD3d 187 [2d Dept, July 30, 2014]). In a searching and thoughtful opinion by Justice Leventhal, the Appellate Division painstakingly explored and expounded upon the provisions and guidelines of HAMP, CPLR 3408 and, most important, the concept of good faith as applied to the mandatory settlement conference process. For purposes of the matter at bar, this court is only concerned with the issue of good faith. Indeed, the Appellate Division, in that opinion, has expressly and unequivocally stated that "the issue of whether a party failed to negotiate in 'good faith' within the meaning of CPLR 3408 (f) should

be determined by considering whether the totality of the circumstances demonstrates that the party's conduct did not constitute a meaningful effort at reaching a resolution" (121 AD3d at 203). Therefore, this express language constitutes the yardstick by which this court must measure the conduct of plaintiff and defendant in order to determine which party, if either, failed to act in good faith.

In accord with the ruling of the Appellate Division in *US Bank N.A. v Sarmiento*, close and careful examination and consideration of the totality of the circumstances reveal that defendant has fully complied with plaintiff's various document demands on multiple occasions, that defendant and/or his counsel have appeared on at least 24 occasions before the undersigned with respect to mandatory settlement conferences, that plaintiff has failed to comply with the HAMP guidelines by offering a "modification" which was facially and obviously not affordable and which exceeded the applicable housing expense ceiling by 39%, that plaintiff failed and refused to negotiate at all with defendant, that plaintiff failed and refused to produce a representative in court despite a court order to do so, and that plaintiff conveyed the loan to a different servicer which engendered further delay in that the process had to begin anew, all of which has inured to the detriment of defendant. Since October 1, 2010, interest has continued to accrue at an adjustable rate of not less (and possibly greater) than 8.2% together with the accrual of added costs, disbursements and, presumably, a claim for reasonable counsel fees.

Based upon the totality of circumstances, this court is constrained to find that plaintiff, and the servicers acting upon its behalf, have acted in bad faith throughout the mandatory settlement conference process, as "bad faith" has been defined in *US Bank N.A. v Sarmiento*, thus inexorably warranting the granting of defendant's application.

It is, therefore, ordered that defendant's application shall be and is hereby granted in its entirety; and it is further ordered that all interest, disbursements, costs and attorney's fees which have accrued upon the loan at issue since October 1, 2010 shall be and the same are hereby permanently abated, shall not be a charge on account of or to the detriment of defendant and that plaintiff and any assignee is forever barred, prohibited and foreclosed from recovering the same from defendant; and it is further ordered that such abatement shall continue in futuro and that no further interest, disbursements, costs or attorney's

fees shall accrue or be chargeable to defendant absent further order of this court; and it is further ordered that any relief not expressly granted herein shall be and is hereby denied.