St. Regis Paper Company, Appellant, *v.* Hubbs & Hastings Paper Company, Respondent.

Contract — sale — interpretation of contract of sale — when relation of parties and surrounding circumstances may be considered by jury — when evidence of parol brokerage agreement incompetent — provision in contracts that prices are to be fixed by mutual agreement unenforcible — interpretation of use of words " agent " and " commissions."

1. When the question is one of the interpretation of a contract, entire in itself in all particulars, it is only when different inferences may fairly be drawn as to meaning and effect of the written language used, that the relation of the parties and the surrounding circumstances are to be considered by the jury in arriving at their intention.

2. When written agreements, except as to price fixing, are complete, certain, explicit and free from ambiguity, and are unmistakably contracts, not of brokerage, but of purchase and sale, the court has no power to alter or vary the terms which the parties have deliberately used to express their intention, and evidence of a parol brokerage agreement is incompetent to show that the formal writings were not the final repository of the agreements.

3. Terms of contracts that prices are to be fixed by mutual agreement, and if the parties do not agree the contracts are to terminate, are so indefinite as to have no legal significance; they amount to nothing more than an agreement to make a future agreement and an agreement to agree is not enforcible.

4. Where by the terms of certain contracts plaintiff agreed to sell and defendant to buy certain amounts of paper yearly for two years at a price fixed for the first three months and thereafter the price to be fixed by mutual consent, the contracts to terminate should the parties fail to arrange a price, and on the same date defendant entered into contracts with others to sell the paper on the same terms but at an advanced price, and, in an action by plaintiff to recover an unpaid balance under its contract with defendant, it appears that plaintiff arbitrarily refused to agree with defendant on a price for future deliveries for the purpose of terminating the contracts, it was error for the trial court to submit to the jury the questions whether the defendant was a broker in the transaction and whether plaintiff acted in good faith in fixing the price of paper. The evidence in the case all tends to establish that the written contracts are the full expression of the parties' agreement and plaintiff exercised its legal right in refusing to agree upon a future price for the paper.

5. Interpreting the contracts in the light of collateral correspondence it appears that the word " agent " was used in the sense of " one with or through whom another transacts business " and that " commissions " was used for the equivalent of " profits."

*St. Regis Paper Co.* v. *Hubbs & Hastings Paper Co.*, 201 App. Div. 397, reversed.

(Argued January 18, 1923; decided January 30, 1923.)

Appeal from a judgment, entered June 19, 1922, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, which reversed an order of the court at a Trial Term setting aside a verdict in favor of plaintiff and granting a new trial and directed reinstatement of said verdict.

*Henry Purcell* and *Francis E. Cullen* for appellant. The relation between the parties was that of vendor and vendee and not that of vendor and broker, as was admitted by defendant's answer. (Civ. Pr. Act, § 247; *Fleishman* v. *Stern*, 90 N. Y. 110; *Burnap* v. *Nat. Bank Potsdam*, 96 N. Y. 125; *Drake* v. *Seaman*, 97 N. Y. 230; *Stowell* v. *Greenwich Ins. Co.*, 136 N. Y. 298; *Marsh* v. *McNair*, 99 N. Y. 174; *Sanders* v. *Cooper*, 155 N. Y. 279; *Dady* v. *O'Rourke*, 172 N. Y. 447; 1 Greenl. on

Ev. §§ 275–277, 282; *Lamb* v. *Norcross Bros. Co.*, 208 N. Y. 427.) The contracts being executory and attempting to provide over a period of years for the sale of paper, the price of which was to be agreed upon in the future, were so indefinite as to preclude a recovery of substantial damages, or commissions, should the court hold that the relation between the parties was that of vendor and broker. ( *United Press* v. *N. Y. Press Co.*, 164 N. Y. 413; *Mayer* v. *McCreery*, 119 N. Y. 434; *Petze* v. *Morse*, 125 App. Div. 267; 195 N. Y. 584; *Sabarsky* v. *Drew*, 176 App. Div. 80; 226 N. Y. 557; *Albany Co. Sav. Bank* v. *McCarty*, 149 N. Y. 85; *Varney* v. *Ditmars*, 217 N. Y. 223; *Waters* v. *Plumbers Pub. Co.*, 86 Misc. Rep. 38; *Harper* v. *Hassard*, 113 Misc. Rep. 187; *Coffin* v. *Landis*, 46 Penn. St. 426; *Peacock* v. *Cummings*, 46 Penn. St. 344; *Van Slyke* v. *Ins. Co.*, 115 Cal. 644.)

*Fred A. Robbins* for respondent. The question whether the relation between the parties was that of vendor and broker with an agreement to pay commissions to defendant, was properly submitted to the jury and the finding of the jury on that question is amply sustained by the evidence. (*Lamb* v. *Norcross Brothers Co.*, 208 N. Y. 427; *O'Grady* v. *Howe & Rogers*, 166 App. Div. 552; *McDonald* v. *Crissey*, 215 N. Y. 609; *Wilson* v. *Randall*, 67 N. Y. 338; *Rogers* v. *N. Y. & T. L. Co.*, 134 N. Y. 197, 210; *Knowles* v. *Toone*, 96 N. Y. 534.) The question of the bad faith of plaintiff in November and December, 1919, was properly submitted to the jury. (*Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378; *Donovan* v. *Weed*, 182 N. Y. 43; *Gillet* v. *Bank of America*, 160 N. Y. 549; *Brassil* v. *M. C. Co.*, 210 N. Y. 235; *Simon* v. *Etgen*, 213 N. Y. 589; *I. & G. Trust* v. *Tod*, 180 N. Y. 215; *Taylor* v. *E. M. S. Co.*, 124 N. Y. 184; *Weir* v. *Barker*, 104 App. Div. 113; *Smith* v. *United Traction Co.*, 49 App. Div. 641; 168 N. Y. 597; *Slade* v. *City of Lexington*, 132 S. W. Rep. 404.)

1923.]                    Opinion, per Pound, J.            [235 N. Y. 30]

Pound, J.    Plaintiff sues for an unpaid balance on the sale of paper.   Defendant, not denying the allegations of the complaint, sets up a counterclaim, alleging that plaintiff is a manufacturer of print paper, such as newspapers are printed on, and that defendant is a broker in the sale of such paper; that defendant as such broker secured contracts for plaintiff from three newspaper publishers for their supply of paper for given periods; that the understanding was that defendant should guarantee the accounts and that the paper so shipped should in the first instance be charged to defendant and not to the newspaper publishers; that plaintiff, after furnishing the publishers paper under such contracts for some time, repudiated its agreement, delivered no more paper and refused to pay defendant the commissions to which it would have been entitled, to its damage.

On the trial it appeared that the transactions between the parties took the following form of written contracts, one set of which was in substance as follows:

Defendant as buyer (for Rochester Printing Company), and plaintiff as seller entered into a contract of sale of paper, 4,500 tons a year for two years from January 1, 1919, price for the first three months ending March 31, 1919, $3.77 per hundred pounds, " *price for the balance of the year to be fixed by mutual consent.   In the event that the parties to this agreement shall fail to arrange a price for any quarter before the expiration of the preceding three months, this contract, in so far as it pertains to delivery over the unexpired period shall terminate.*"   " If at any time during the life of this contract, both parties can agree on a fixed price for the balance of the contract, that agreement shall take the place of the three months price agreement." The contract under the caption " Remarks " contains the usual provisions relieving either party from liability for failure to take or supply such paper in consequence of strikes and other causes beyond their control.   It also

3

provides that the provisions *last referred to* shall run through to " an original contract " between defendant and the Rochester Printing Company for whose use the contract is placed, and that the publisher and plaintiff are the contracting parties as " *to said conditions,*" *i. e.,* as to strikes, etc.

On the same date Rochester Printing Company as buyer and defendant as seller entered into a contract of sale in the same terms as the foregoing, excepting only that the price was fixed at $4.10 per hundred pounds.

The other two sets of contracts differ only as to name of publisher, price, amount of paper and period covered. In the last quarter of 1919 plaintiff refused to agree with defendant on a price for the first quarter of 1920, and finally quoted a price so high that the publishers could not agree on it with defendant. In so doing it acted arbitrarily without making an attempt to agree and for the purpose of terminating the contract, depriving defendant of its prospective profits on the transaction and placing the business in the hands of others.

Defendant contends that this transaction was a sale by the plaintiff to the publisher, the defendant acting as a broker and receiving a commission of two per cent on the contract price. Plaintiff's contention is that the transaction as evidenced by the formal written instruments was a sale to defendant and a resale by it to the publisher. The contract price for the first three months in each transaction was to net defendant two per cent, and this amount was referred to by the parties in their correspondence as a commission.

The trial court submitted to the jury the question whether the defendant was a broker in the transaction and whether plaintiff acted in good faith in trying to fix the price of paper. The jury found for the defendant. The trial justice set the verdict aside and granted a new trial, saying that, assuming defendant acted as broker, its commissions must be limited to two per cent on the

paper to be delivered during the first three months of the contract, as the only enforcible contract between the parties was for the first three months' delivery and beyond that nothing but a possibility of future agreement remained.

The Appellate Division held that the contract was between broker and principal and that it implied good faith and required the exercise of an honest attempt to agree on the price of future deliveries; that the case was properly submitted to the jury and that the verdict should be reinstated.

Doubtless a broker's authority cannot be terminated in bad faith so as to permit the principal to take advantage of the broker's efforts in his behalf and at the same time escape the payment of his commissions (*Sibbald* v. *Bethlehem Iron Co.,* 83 N. Y. 378), but good faith does not require the contracting parties to do more than they are expressly or impliedly bound by their contract to do, and the question arises as to the real contract of the parties evidenced by their solemnly executed writings.

The written agreements, except as to price fixing, are complete, certain, explicit and free from ambiguity. They are unmistakably contracts, not of brokerage, but of purchase and sale. The parties have put their bargain into the form they chose. The court has no power to alter or vary the terms which they have deliberately used to express their intention. The real agreement of the parties as thus expressed is that plaintiff will sell and defendant will buy and that defendant will sell and the publisher will buy the paper on the conditions indicated. " When a legal act is reduced into a single memorial, all other utterances of the parties on the topic are legally immaterial for the purpose of determining what are the terms of their act." (Wigmore on Evidence, § 2425.) The evidence in the case all tends to establish that the written contracts are the full expression of the terms of the parties' agreement. When the question is one of the

interpretation of a contract, entire in itself in all particulars, it is only when different inferences may fairly be drawn as to the meaning and effect of the written language used, that the relation of the parties and the surrounding circumstances are to be considered by the jury in arriving at their intention. (*Lamb* v. *Norcross Bros. Co.*, 208 N. Y. 427, 431.) Evidence of a parol brokerage agreement was, therefore, incompetent to show that the formal writings were not the final repository of the agreements before us. " You can no more add to or contradict its legal effect by parol stipulations preceding or accompanying its execution than you can alter it through the same means in any other respect." (*Thomas* v. *Scutt*, 127 N. Y. 133, 140.)

But one element of the contracts was left open to future negotiations. Prices were to be fixed by mutual agreement and if the parties did not agree, the contracts were to terminate. These terms are so indefinite as to have no legal significance; they amount to nothing more than an agreement to make a future agreement; an agreement to agree is not enforcible. Plaintiff exercised its legal right in refusing to be bound thereby. (*United Press* v. *N. Y. Press Co., Ltd.*, 164 N. Y. 406, 413; *Varney* v. *Ditmars*, 217 N. Y. 223.) Defendant's counterclaim should have been dismissed.

Even if for proper interpretation the contracts are to be read in the light of the collateral correspondence, it appears that the word " agent " was used by the parties, not meaning " one who acts for a principal," but in the not unusual sense of " one with or through whom another transacts business," and that the word " commissions " was used for the equivalent of " profits." Thus when dealers advertise themselves as agents or exclusive agents for certain manufactured articles such as automobiles, it does not follow that they are selling on a commission for the manufacturer. On the contrary, it often appears that they are compelled to purchase out-

right and are expected to sell for a fixed percentage of profits which might loosely be styled commissions. The disposition of the case is, therefore, placed on broad fundamental grounds and not on narrow technicalities which might serve only to conceal the real obligations of the parties.

The judgment should be reversed and judgment granted in favor of plaintiff against defendant for $44,426.03, with interest from January 15, 1920, with costs in all courts.

HISCOCK, Ch. J., HOGAN, CARDOZO, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgment reversed, etc.