Fernando G. Chiapparelli, Respondent, *v.* Baker, Kellogg & Company, Inc., Appellant.

(Argued October 21, 1929; decided November 19, 1929.)

*Harold H. Corbin* and *Edward J. Bennett* for appellant. The minds of the parties never met upon any contract. There was, at best, only a conditional offer of the plaintiff's services in conducting negotiations which, owing to the failure of the conditions, never became an actual offer and which was, in any event, never accepted. (*Pomeroy* v. *Newell*, 117 App. Div. 800; *Heller* v. *Pope*, 250 N. Y. 132; *Arliss* v. *Brenon Film Corp.*, 230 N. Y. 390; *Petze* v. *Morse Dry Dock & Repair Co.*, 125 App. Div. 267; *Mandell* v. *Guardian Holding Co., Inc.*, 200 App. Div. 767; *Fowler* v. *Hoschke*, 53 App. Div. 327; *Meltzer* v. *Flying Fan, Inc.*, 224 App. Div. 41; *McVickar* v. *Roche*, 74 App. Div. 397.)

*Samuel C. Steinhardt* and *Walter S. Newhouse* for respondent.

KELLOGG, J. The plaintiff, Fernando Chiapparelli, was a member of an Italian mission sent to the United States in the year 1915. He represented the Italian government in this country from the year 1915 to the year 1919 and was in charge of the financial department of the mission. His official duties brought him into contact with many important New York banking houses.

In the year 1924 he was employed by the banking house of F. J. Lisman & Company to procure for them the financing of foreign loans. In the service of that company he was sent to Austria in 1924, where he spent the months of September and October. In Vienna he met a Dr. Rintelen, who was the Governor of Styria, one of the nine provinces of the Republic of Austria. Rintelen was interested in obtaining a loan of five million dollars for his province. On his suggestion, Chiapparelli visited Styria. At Graz, the capital of Styria, he procured written data concerning the resources of the province, and obtained from the provincial government options for Lisman & Company to make to Styria a loan of four million or five million dollars, and take over the bonds of the province at a stated figure. On Chiapparelli's return to New York, Lisman & Company determined not to take on the loan. Chiapparelli left their service and attempted to interest other banking houses in the loan to Styria. Mr. Owen, of Hornblower, Miller & Garrison, general counsel for the defendant herein, introduced Chiapparelli to two responsible New York houses, but they proved not to be interested in the matter. At this time the Styrian options had long since expired. Nevertheless, Chiapparelli retained confidence in his ability to reinstate himself with the government officers of Styria so that he might have the financing of the loan on favorable terms. He says: " I could provide the business any time I could find a banking house *ready to do it.*" He told Mr. Owen that, although the Styrian option had expired, " He felt that his relations with Governor Rintelen were such that he could get it restored if he had a banking house actually *prepared to take the contract.*" In July, 1925, Chiapparelli was introduced to Mr. Bromley, the vice-president of the banking house of Baker, Kellogg & Company, Inc., the defendant herein.

Baker, Kellogg & Company, Inc., had already become interested in Styrian loans. At this time they had

under negotiation a loan of five million dollars to a Styrian hydro-electric company, known as " Stewag," to be guaranteed by the Styrian government. That the various provinces of the Republic of Austria were sadly in need of financing was commonly known to New York bankers. On June 15th a meeting of bankers, including a representative of the defendant, occurred, at which loans to the various Austrian provinces, including Styria, were discussed. It was recommended at the meeting that all loans to the separate provinces be held in abeyance, pending an arrangement whereby a joint loan to all the provinces might be negotiated. A representative of Baker, Kellogg & Company had already visited Styria where he had discussed with Governor Rintelen, not only the loan to Stewag, but to the province of Styria itself.

On June 21, 1925, Bromley called upon Chiapparelli to see if he could be of assistance to the defendant in procuring, through his influence with Governor Rintelen, a governmental guaranty of the proposed Stewag loan. Chiapparelli told him that this would be impossible until a loan to the province of Styria itself had been arranged. Of this fact the defendant was already cognizant. Chiapparelli then attempted to interest Bromley in the provincial loan itself. Bromley said that the matter might prove interesting and asked Chiapparelli to bring his data to the office and talk with Mr. Luitweiler, the president of the defendant.

On the 25th day of June Chiapparelli and Luitweiler met in the latter's office. The opening words of their conversation are significant. Chiapparelli spoke to Luitweiler as follows: " I would not be interested in telling to the Government of Styria about this provincial loan unless I was sure that his [Luitweiler's] house was seriously interested." Luitweiller then spoke as follows: " He asked me if I could assist him in securing this loan and support his desire for this loan with the Governor

Rintelen." Chiapparelli told Luitweiler that he had with him all the data, which he had collected for Lisman & Company, to start the foundation of the business and to find out whether the business would be possible or not. Luitweiler said that " it would be interesting to send a telegram to the Governor Rintelen; that he would see if I could go there and negotiate for them the deal, if they would decide to do it." Chiapparelli said: " What would be my compensation if the business will be arranged? " Luitweiler said: " How much would you want? " Chiapparelli replied that he would be satisfied if he had " one per cent commission on the face value of the loan when it was completed." To this Luitweiler answered, " Satisfactory." Chiapparelli said he would turn over all the papers, in reference to the loan, which he had gathered for Lisman & Company, and, taking them from his brief case, handed them to Luitweiler.

After the conversation had with Luitweiler, the defendant delayed for nearly a month to notify Chiapparelli whether it was or was not interested in the Styrian loan. Chiapparelli, growing impatient at the delay, on July 22d, 1925, wrote the defendant as follows: " Gentlemen: I assume that you are not interested in the loans for the Province of Styria, which was the object of several conferences between your good selves and me the early part of June. As I am leaving for Europe next Saturday, kindly return to me the official papers and data pertaining to the abovementioned loan, which were left in your office at the request of Mr. J. C. Luitweiler. To avoid delay, I will appreciate it if you will address the papers to me, and deliver same to Mr. Owen's office." Complying with the request thus made, the defendant at once returned the papers to Chiapparelli which he had left with Luitweiler.

In January or February, 1926, the defendant negotiated a loan of five million dollars to the Province of Styria. The plaintiff claimed that he was entitled, under the

terms of an agreement alleged to have been made with the defendant on June 25, 1925, to a commission of one per cent upon the amount loaned, or $50,000. A verdict in his favor for that amount, with $9,000 added for interest, was returned by a jury, and a judgment therefor, entered upon the verdict, has been affirmed by the Appellate Division.

A familiar rule of law has been expressed by Professor Williston in the following terms: " Since an offer must be a promise a mere expression of intention or general willingness to do something on the happening of a particular event or in return for something to be received does not amount to an offer." (Williston on Contracts, § 26.) It is, also, said by Professor Williston: " Frequently negotiations for a contract are begun between parties by general expressions of willingness to enter into a bargain upon stated terms and yet the natural construction of the words and conduct of the parties is rather that they are inviting offers, or suggesting the terms of a possible future bargain than making positive offers." (§ 27.)

We think that neither Chiapparelli nor Luitweiler, in the conversation of June 25, 1925, indicated by their words any intention presently to make a bargain either absolute or conditional. Chiapparelli opened the conversation by stating that he would not be interested in talking to the Governor of Styria about the loan unless he was sure that Baker, Kellogg & Company, Inc., represented by Luitweiler, " was seriously interested." Luitweiler said that " he would see if " Chiapparelli " could go there and negotiate for them the deal, if they would decide to do it." On cross-examination Chiapparelli said of this conversation: " I told Mr. Luitweiler that I had all the papers completed to give him the possibility of starting the loan, and decide to do it or not." Again, when asked, " As a matter of fact, Captain, you were told by Mr. Luitweiler, that if they considered

the subject sufficiently interesting to go into it, that they would let you know," he answered, " Yes." Luitweiler says of the conversation with Chiapparelli: " I asked him at that time whether he desired to take up such matter again. He said: ' No, I do not, until such time as a banking house makes a firm offer for the business.' I should explain by that that the banking house says in advance: ' We will take this loan.' And he said: ' If you, Baker, Kellogg & Company, will say: ' Yes, we will take this loan,' then I will agree to negotiate it for you." That Chiapparelli made these statements to Luitweiler is not denied by him. Neither are the statements inconsistent with the testimony of Chiapparelli in reference to the conversation. We think it entirely clear that the negotiations did not pass the invitation stage; that they were wholly tentative; that Chiapparelli never bound himself, even conditionally, to carry on negotiations for a loan with the officers of the Styrian government; that he reserved the right to make a decision until he could sense, from future expressions made by Baker, Kellogg & Company, Inc., how deep an interest in the proposed loan was taken by it; that Luitweiler never obligated his company to employ Chiapparelli either absolutely or conditionally; that the matter of the employment of Chiapparelli, as well as the assumption of the Styrian loan, was reserved by him for future consideration by his company.

If we assume, however, that Luitweiler, acting for the defendant, promised a commission to Chiapparelli, on condition that the defendant determined to take on the Styrian loan, even then we cannot perceive that the promise ever emerged from the offer stage to become and remain a binding obligation.

It is suggested that the delivery by Chiapparelli to Luitweiler of the documents, referred to in the conversation between them, was the consideration given by the former for the promise made by the latter, and that

a unilateral contract was thereby formed. The papers delivered consisted of the options granted by the Province of Styria to Lisman & Company, which had expired; various documents containing statistics as to the natural resources of the province, all of which were procurable for the asking at the governmental offices of Styria; a copy of a resolution of the provincial government refusing to guarantee a loan to Stewag; a copy of a letter from Governor Rintelen inviting Chiapparelli to Graz to discuss the foreign loan; and a tourists' guide to Styria showing many picturesque scenes. No information of a personal or confidential nature was contained in the documents. Nothing was shown which might not have been, upon request, made known to the entire world. The documents had value, therefore, not for the purpose of effectuating a loan to Styria, but only for the purpose of enabling a banker, to whom they might be exhibited, promptly to form an impression that he might or might not become interested in giving consideration to the loan. Chiapparelli himself says this. He was asked: " You feared that they might use them to close this loan themselves?" He answered, " Oh, no." Again, he was asked: " You didn't? " He answered: " No; these papers would not answer to close the deal. Those papers were given to the bank for an opinion of the loan. They had gotten the opinion already." In view of the nature of the papers and the purpose of their delivery to Luitweiler, as expressed by Chiapparelli himself, the suggestion made that their delivery to Luitweiler for the defendant constituted a consideration for the promise said to have been made, seems entirely vain, and may not be accepted.

We think it clear from the proof that, assuming a present promise was in fact made by the defendant, that promise was offered in exchange either for (1) services to be performed by Chiapparelli in negotiating the loan, or (2) for his contemporaneous promise to perform such services. Thus Chiapparelli stated, as we have noted,

that Luitweiler asked him if he "could assist him in securing this loan;" "he would see if I could go there and negotiate for them the deal." In answer to the question, "And what is it that you say you were to do?" Chiapparelli said, "Help them in negotiating this loan in Austria, if they were going to send me there, and get in touch immediately with the Governor of Styria in order to smooth over the difficulties, whatever they were, if there were any at that time." Again, he said that the defendant was to "use me as negotiator, if they were going ahead and close the deal." Once more, he said that Luitweiler stated that he would "Possibly send me there to negotiate for the firm." Granted that the consideration for the alleged promise to be furnished by Chiapparelli was either the one or the other of the two alternatives stated, it is self-evident that the consideration, named in the first alternative, never gave rise to a binding promise on the part of the defendant. Chiapparelli, it is conceded, performed no services whatsoever in negotiating the Styrian loan for the defendant. Consequently, no act was done by him in exchange for the alleged promise, and, therefore, no unilateral contract ever arose. It remains to be considered whether a promise by Chiapparelli to perform the services, the second alternative mentioned, constituted a consideration which made binding the alleged promise of the defendant.

Where a promisor retains an unlimited right to decide later the nature or extent of his performance, the promise is too indefinite for legal enforcement. The unlimited choice in effect destroys the promise and makes it merely illusory. (Williston on Contracts, § 43.) "If definite enough to be interpreted plainly, but giving the promisor an unlimited option, such a promise may be assented to by the parties but will not serve as consideration for a counter promise." (Id.) We may pass the question whether the alleged promise of the defendant to pay for Chiapparelli's services, made on the express condition

that the defendant might subsequently decide to take on the Styrian loan, involved an unlimited option to become bound to Chiapparelli, or not to become bound, as the promisor might choose, and, therefore, was illusory. Doubtless, if the promise was not withdrawn, and the event occurred, viz., the making of a determination favorable to the loan, the continuing offers of the parties might have ripened into enforcible obligations. However, it may be doubted whether, pending the decision to be made, Chiapparelli's promise to perform the services ever became a binding obligation. The only consideration therefor would have been the defendant's promise to employ Chiapparelli, in case the defendant chose to negotiate for the loan. This was an event, the happening of which was entirely at the defendant's command. In effect, the defendant had said to Chiapparelli, " I will use your services, and make payments therefor if I choose to use and pay for them." Assuming that such was the character of the defendant's promise, then the promise of Chiapparelli, being unsupported by a valuable consideration, was a mere offer revocable at will. In any event, it was clearly an implied term of the agreement, if one there was, that the defendant should render its decision within a reasonable time. If it was not so rendered, Chiapparelli was entitled to withdraw from the bargain made. Chiapparelli waited for thirty days. He then wrote the defendant, as we have noted, that he assumed that the defendant was not interested in the Styrian loan, and demanded that it return to him the documents which he had delivered to Luitweiler. The letter manifested an election on Chiapparelli's part to declare that, owing to the unreasonable delay of the defendant, he withdrew his offer to perform the services. The defendant acquiesced in the election and withdrawal by returning the papers to Chiapparelli as requested. Certainly, if Chiapparelli was no longer bound to the defendant by his promise, as we think must be clear,

the defendant was no longer bound to Chiapparelli by its promise. Indeed, if ever there had been a contract, it had thus been abrogated by the acts of both the parties thereto.

For all these reasons we think that the plaintiff failed to establish a cause of action in contract against the defendant.

The judgments should be reversed and the complaint dismissed, with costs in all courts.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, O'BRIEN and HUBBS, JJ., concur.

Judgments reversed, etc.