**OIL TRADING ASSOCIATES, INC.,**
Plaintiff-Appellant,

v.

**TEXAS CITY REFINING, INC.,**
Defendant-Appellee.

No. 331, Docket 27415.

United States Court of Appeals
Second Circuit.

Argued April 25, 1962.

Decided June 1, 1962.

**714**

Raoul Berger, Washington, D. C. (Milton Pollack and Samuel Greenspoon, New York City, on the brief), for plaintiff-appellant.

Edwin H. Krom, New York City (Wesley J. Liebeler and Carter, Ledyard & Milburn, New York City, on the brief), for defendant-appellee.

Before MOORE, SMITH and MARSHALL, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

Plaintiff, Oil Trading Associates, Inc. (OTA), appeals from a final judgment entered by express direction of the court pursuant to Rule 54(b), F.R.Civ.Proc., 28 U.S.C.A. dismissing on motion for partial summary judgment the First Claim of the complaint against defendant, Texas City Refining, Inc. (TCR). Jurisdiction is based upon diversity of citizenship and the requisite amount is in controversy.

Although an affidavit and excerpts from depositions of both parties were submitted on the motion, for purposes of this appeal only the undisputed facts are considered.

On May 1, 1952, OTA and TCR entered into a contract whereby OTA was employed to act as exclusive sales agent for the entire output of TCR's oil refinery. Paragraph 6 of this contract provided:

> "This contract shall terminate on or upon any date after December 31, 1953, upon twelve (12) months' written notice by either party to the other, provided that prior to the giving of such notice the parties have not been able, within a period of not more than ninety days of negotiations, to agree upon a renewed or revamped contract or a mutually satisfactory termination date."

On July 16, 1954, TCR's president wrote to the president of OTA as follows:

> "This will notify you that we desire immediately to commence negotiations with you, looking toward agreement upon a renewed or revamped contract in accordance with the provisions of paragraph 6 in the letter agreement between us dated May 1, 1952."

Subsequently, on November 15, 1954, TCR informed OTA that since the negotiations had been unsuccessful TCR desired to terminate the existing agreement on November 15, 1955.

For a First Claim, OTA alleged the contract of May 1, 1952; that on November 15, 1954, TCR wrongfully discharged OTA effective on November 15, 1955; that since November 15, 1955, TCR refused to permit OTA to carry out the contract; and that it had failed to pay to OTA the amount of the agreed compensation under the contract.

OTA contends that the notice of termination mentioned in paragraph 6 of the contract could not have been effectively given unless prior thereto the parties had negotiated in good faith during a 90-day period in an effort to agree upon "a renewed or revamped contract" and that, absent proof of such good faith negotiation and an honest failure to agree on terms, the notice of termination was ineffectual. Thus, OTA would have us reverse the district court's grant of summary judgment on the ground that the question whether TCR negotiated in good faith was one of fact which could not be decided on a motion for summary judgment.

TCR, on the other hand, argues that the words "negotiate in good faith" are not in the contract; that no affirmative duty to negotiate is set forth; and that at most a period of 90 days was provided in which the parties could negotiate if they so desired. TCR contends that by giving notice of its desire to negotiate

on July 16, 1954, and by giving notice of termination on November 15, 1954, it had complied with the requirements of paragraph 6 and was entitled to terminate the agreement on November 15, 1955, and therefore the district court properly granted its motion for summary judgment.

The meaning which OTA would have us read into the proviso of paragraph 6 (as stated in the OTA brief):

"is that the parties were required to use reasonable and continuing efforts to agree on the terms of a new contract or termination date of the existing contract during the period of 90 days.

"Such reasonable efforts required the parties to keep an open mind during the 90-day period, to make and solicit proposals, make counterproposals, suggest compromises, meet at reasonably frequent intervals for purposes of discussion, whether such reasonable efforts were made being a question for the jury under appropriate instructions."

Although the district court assumed "for the purposes of this motion, that no meaningful negotiations took place between the parties for a renewed or revamped contract during this period," OTA admits that the parties met during this period, that certain complaints as to the operation of the contract were registered, and that one of these complaints was settled. However, OTA claims that these negotiations were not "meaningful" or "in good faith." Were we to accede to OTA's wishes and write these words into the contract, quite a different contract would be foisted on TCR than the one it signed. OTA would then have the "meaningful" or "good faith" nature of the parties' negotiations, or lack thereof, submitted to a jury, thereby turning over to twelve persons not charged with management responsibility for TCR's operation the task of deciding whether TCR was justified in refusing to continue under the present contract or in making certain demands. We cannot agree with OTA's contention that by accepting a 90-day period for negotiations TCR was agreeing to subject the "good faith" of its actions to such scrutiny by a jury. TCR could not, under this view, decide ahead of time that it did not wish to deal with OTA any longer because that decision by itself would preclude "good faith" negotiations. The use of the word "negotiations" does not indicate an intent to surrender the right to decide not to enter into another contract under any circumstances. This conclusion is supported by the language of the provision itself, for it indicates that the "negotiations" may be over a termination date as well as over a new contract.

The construction which OTA advocates would for all practical purposes foreclose any decision by TCR to terminate its relationship with OTA. In fact, it presupposes a definite obligation to "make and solicit proposals, make counterproposals, suggest compromises." Thus, if TCR took the position, for example, that a 3% commission was the maximum it was willing to pay and OTA originally demanded 15% but made concessions to 10%, 7½%, 5% and, finally, 4%, OTA would have a jury determine whether such action on the part of TCR in holding firm to its decision was reasonable or in good faith. It might well be that a jury hearing of OTA's many reduction concessions might entertain the view that TCR was being unreasonable and, hence, not acting in good faith. Yet such a result would deprive TCR of its right to determine the terms to which it was willing to agree. To give a jury the power by its verdict to determine that the conduct of OTA or TCR had not been reasonable would transfer the management of the companies and the right to decide upon its own contractual arrangements to a jury not charged by law as are officers and directors with managerial responsibilities. Nothing is to be found in paragraph 6 which would warrant any such construction. To the contrary, the very purpose of the paragraph was to provide for termination notice procedure with the simple proviso

capable of determination without factual dispute, namely, by the fact that within the 90-day period a renewal contract had not been agreed upon.

Nor can we agree with OTA's claim that a failure to read paragraph 6 as imposing an obligation to negotiate in good faith renders this provision meaningless. This proviso certainly can be read to create a "cooling off" period of "not more" than ninety days during which either party is free to make proposals. It is not meaningless to establish a two-step termination process, with the first stage involving an opportunity to negotiate and the second beginning with a definite notice of termination. Such a two-stage method of termination gives the parties more flexibility than they would have if the contract provided simply that notice of termination was to be given fifteen months in advance, since the parties would be in a much better position to know whether the contract would, in fact, be terminated if the notice of termination were preceded by a period of negotiations.

Since we have determined that paragraph 6 did not require the parties to engage in "meaningful" negotiations before notice of termination could be given, we do not have to decide whether an agreement to negotiate in good faith would be enforceable. See St. Regis Paper Co. v. Hubbs & Hastings Paper Co., 235 N.Y. 30, 138 N.E. 495 (1923); Royce Haulage Corp. v. Bronx Terminal Garage, Inc., 185 Misc. 892, 57 N.Y.S.2d 760 (App.Term Sup.Ct.1945).

The judgment is affirmed.

SMITH, Circuit Judge (concurring in the result).

I concur in the result. I would hold that a corporation may validly contract to negotiate, as a condition of contract termination, in a manner the reasonableness of which may be submitted to a trier of fact, whether court, jury or arbitrator, if the parties so intend, even though the manner of performance, absent the contract, might be termed a management function. I agree, however, that

the termination provision here is no more than a time of notice provision, giving O. T. A. opportunity to present its case for renewal and allowing time thereafter to wind up its contractual arrangements with its own personnel engaged in servicing the TCR contract. There is therefore no issue for trial, and summary judgment is proper.