James A. MITCHELL and Harry Terry,
Plaintiffs,

v.

Charles M. HART and Clemens J. Benvenga, individually, and Hart, Benvenga and Associates, a copartnership consisting of Charles M. Hart and Clemens J. Benvenga, Defendants.

Civ. A. No. 66 Civ. 1150.

United States District Court
S. D. New York.

Oct. 10, 1966.

George G. Hunter, Jr., New York City, for plaintiffs.

French, Fink, Markle & McCallion, New York City, for defendants; Joseph Markle, Harold J. Raby, and Fred P. Ellison, New York City, of counsel.

OPINION

HERLANDS, District Judge:

Defendants Charles M. Hart and Clemens J. Benvenga, individually, and Hart, Benvenga and Associates, a copartnership consisting of the above-named individual defendants, have made a motion for an order, pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, dismissing the amended complaint for failure to state a claim upon which relief can be granted. Alternatively, defendants have moved for an order, pursuant to Rule 12(f), striking several paragraphs from the amended complaint.

According to the allegations pleaded in plaintiffs' amended complaint, which must be taken as true for purposes of this motion, the facts are substantially as follows:

Prior to 1963 plaintiff Terry, a licensed engineer, entered into a copartnership with defendant Hart, Benvenga and Associates, an architectural firm, "to furnish architectural, engineering and related services for projects located in New Jersey, Pennsylvania and elsewhere as may be agreed upon between the parties." (Am.Comp. par. 8 and annexed Exhibit "A".) In or about January, 1963, plaintiff Mitchell, an accomplished architect specializing in preliminary design work, entered into an oral agreement with Hart, Terry and Benvenga and defendant Hart, Benvenga and Associates for the joint solicitation of architect-engineering contracts. (Am. Comp. par. 10.) Agreement was had on plaintiff Mitchell's share of the fee or profits, depending upon the size of the project, and on various other matters.

On February 11, 1963, the parties executed a written memorandum of agreement. (Am.Comp. par. 12 and annexed Exhibit "B".) The instrument outlined Mitchell's responsibilities as a consulting architect on projects jointly solicited, and specified his share of the fee and the schedule for payment thereof under various circumstances. The agreement further provided that major projects costing in excess of 10 million dollars would be executed as a "Joint-Venture association * * * on mutual agreement." A division of profits for such

projects was specified but "financial arrangements" were left to be "mutually agreed upon." The memorandum stipulated that "a complete legal agreement for this association will be prepared and executed before the signing of a client contract." The concluding paragraph of the memorandum noted that "the above terms are based on projects involving joint solicitation with Mitchell and the use of his brochure and background." Other terms were provided for projects "not involving joint solicitation and use of Mitchell's brochure."

In a clarification letter from defendant Hart to plaintiff Mitchell also dated February 11, 1963 (Exhibit "B"), it was stated that "in the event an Agency of the Government or other client desires the association of our group (Hart, Terry and Benvenga and James A. Mitchell, Consultant) with other firms, under an expanded Joint Venture arrangement, then a separate arrangement, satisfactory to both Hart, Terry & Benvenga and James A. Mitchell will be made as regards their participation and interest with respect to each such Joint Venture project. All to be mutually agreed upon."

Pursuant to the agreement, plaintiff Mitchell prepared and furnished to defendants a government architect-engineer questionnaire form and his brochure and resume describing his professional background. The defendants used these materials in soliciting, jointly in the name of plaintiff Mitchell and Hart, Terry and Benvenga, numerous government agencies and private builders. Mitchell and Terry likewise solicited projects for the group and, in particular, solicited work from the Post Office Department on Post Office facilities in New York City. (Am. Comp. pars. 14, 40.)

On or about June 12, 1964, defendants in association with Frank Grad & Sons (denominated the "Grad-Hart" joint venture) executed a contract with the Post Office Department and General Services Administration to furnish architect-engineer services on the 120 million dollar

Murray Hill Post Office facility for a fee of 504,000 dollars. (Am.Comp. par. 15.) The defendants failed to inform either plaintiff of this agreement. After the contract had been signed, defendants, upon repeated inquiry by plaintiff Mitchell, represented that negotiations on a Post Office project were proceeding and that Mitchell's interests were being protected. (Am.Comp. par. 17.)

Apart from the arrangements already noted, it is alleged on behalf of plaintiff Terry that his copartnership agreement (Exhibit "A") with Hart, Benvenga and Associates was "extended by instruments in writing and oral agreement to include all projects embraced by this complaint." (Am.Comp. par. 8.).

Each plaintiff claims the right to an accounting or, in the alternative damages for breach of contract.

### I.

That part of defendants' motion seeking an order, pursuant to Fed.R.Civ.P. 12(b) (6), dismissing the amended complaint for failure to state a claim upon which relief can be granted, is denied in all respects for the reasons hereinafter set forth.

In substance, defendants' attack on the legal sufficiency of the amended complaint is two-pronged. On the one hand, they argue that the arrangements among the four parties were too indefinite to give rise to an enforceable claim on the part of plaintiffs in regard to the Murray Hill Post Office project. Alternatively, they contend that the alleged contractual relationship between the parties could not form the basis of a legally enforceable claim on behalf of Mitchell or Terry because Mitchell was not licensed to practice architecture in the State of New York until more than nine months after the Post Office contract was executed.

Plaintiffs resist the initial thrust of defendants' attack by arguing that, notwithstanding its indefinite nature, their agreement gave rise to a fiduciary duty

on projects involving joint solicitation, and that this fiduciary duty was breached by defendants in their clandestine negotiation and execution of the Post Office contract to the exclusion of plaintiffs.

In opposition to defendants' alternative claim of unenforceability under State licensing law, plaintiffs advance several arguments. Specifically, they contend that because the Post Office project is a federal contract, State licensing requirements are preempted by federal legislation under the rule of Leslie Miller, Inc. v. State of Arkansas, 352 U.S. 187, 77 S.Ct. 257, 1 L.Ed.2d 231 (1956). Furthermore, they argue, even if State law were to prevail, Mitchell would have been eligible for a temporary permit or could have otherwise lawfully performed services as an employee of the defendant partnership. Citing the recent decision of our Court of Appeals in Spanos v. Skouras Theatres Corp., 364 F.2d 161 (2d Cir. 1966), plaintiffs contend, therefore, that the claim is not unenforceable by reason of illegality because the arrangements were "susceptible of being lawfully performed." Id. at 169.

Finally, the point is made that, even if plaintiff Mitchell has no enforceable claim against defendants, plaintiff Terry's claim survives under his original partnership agreement and subsequent agreements between himself and defendants.

In form, the amended complaint is divided into four separately labeled subdivisions, two on behalf of Mitchell against all defendants and two on behalf of Terry against all defendants. Despite its form, however, the Court finds that, within the meaning of Fed.R.Civ.P. 12(b) (6), the amended complaint contains but two claims for relief, one on behalf of each plaintiff. See Goldstein v. North Jersey Trust Co., 39 F.R.D. 363, 366 (S.D.N.Y. 1966); cf. Original Ballet Russe, Ltd. v. Ballet Theatre, Inc., 133 F.2d 187, 189 (2d Cir. 1943).

■■ A motion to dismiss pursuant to Fed.R.Civ.P. 12(b) (6) may be granted only if the complaint fails to state a claim upon which relief can be granted under *any* legal theory. Miller v. Director, Middletown State Hospital, 146 F.Supp. 674, 677 (S.D.N.Y.1956), aff'd, 243 F.2d 527 (2d Cir. 1957) (per curiam). As the Supreme Court has explained: "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

■ Measuring each of the two claims by this yardstick, with due regard for the mandate of Fed.R.Civ.P. 8(f) to construe pleadings so as to do "substantial justice," the Court has concluded that the motion to dismiss the amended complaint must be denied.

That the allegations made on behalf of plaintiff Mitchell fail to support an immediate contractual right to a portion of defendants' profits from the Post Office project seems eminently clear under the controlling authorities. See, e. g., Chiapparelli v. Baker, Kellogg & Co., 252 N.Y. 192, 197, 169 N.E. 274 (1929); Ansorge v. Kane, 244 N.Y. 395, 398, 155 N.E. 683 (1927); St. Regis Paper Co. v. Hubbs & Hastings Paper Co., 235 N.Y. 30, 36, 138 N.E. 495 (1923).

■ The memorandum agreement of February 11, 1963 could hardly have been more emphatic in leaving for "tomorrow" the negotiation of arrangements for carrying out specific projects of this magnitude when and if secured. It is hornbook learning that such an "agreement to agree" lacks the essentials of a binding contract and will not gain enforcement in the courts. See, e. g., Corbin, Contracts § 95 (1963); Williston, Contracts § 45 (1957).

Nevertheless, this uncertainty of obligation in regard to then unknown projects does not necessarily preclude recov-

ery here. While the joint ventures envisaged for the performance of major projects were never realized, at least amongst these parties, a more limited joint endeavor was undertaken—the solicitation of prospective clients. The essence of Mitchell's claim then seems to be that an agreement for joint solicitation was made; that all parties did in fact solicit projects in the name of the group; that defendants secretly and to his exclusion negotiated and executed a major contract with a client previously solicited by plaintiff on behalf of the group; and that thereafter defendants falsely represented to him that negotiations were proceeding and that his interests were being protected.

Whether the evidence adduced in support of these allegations will be sufficient to support the claimed fiduciary duty and breach thereof poses issues that cannot be resolved at this stage of the litigation. Because the asserted fiduciary relationship is not without basis in law, plaintiff should be permitted to argue his claim upon the law and facts as developed. Compare Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1 (1928) and Air Technology Corp. v. General Electric Co., 347 Mass. 613, 199 N.E.2d 538 (1964) with Appleman v. Kansas-Nebraska Natural Gas Co., 217 F.2d 843 (10th Cir. 1954) and Mason v. Rose, 176 F.2d 486 (2d Cir. 1949).

Defendants, in their memorandum of law in support of the motion to dismiss, discuss at length the question of the enforceability of plaintiff Mitchell's alleged claim in view of the fact that Mitchell was not licensed to practice architecture in the State of New York until some time after the Post Office contract was executed. In support of their contention that Mitchell's claim must be dismissed, defendants cite an impressive array of New York cases which have barred actions seeking compensation for services rendered because of the plaintiff's failure to comply with State licensing requirements—including those pertaining to the licensing of architects. (Defendants' Memo. pp. 11–18.) They also point to several authorities in which an accounting of partnership or joint venture profits was denied on the ground that the plaintiff had not secured a liquor license. (Defendants' Memo. pp. 18–20.) Whatever the status of the law on the issues posed therein, those decisions are inapposite here.

■ Plaintiff Mitchell's claim is derived only indirectly from the contract for the performance of services concluded between the Post Office Department and the Grad-Hart joint venture. The source of Mitchell's rights is the initial arrangement for the joint solicitation of projects, and his claim springs from a violation of the trust reposed in the defendants under that agreement. Whether Mitchell could have obtained a license or temporary permit before the Post Office contract was signed, or otherwise lawfully participated in the Post Office project, is—at least at this juncture of the case—a matter of conjecture not material to the validity of the claim based on the allegedly wrongful exclusion from the opportunity of participation. Cf. Spanos v. Skouras Theatres Corp., 364 F.2d 161, 169 (2d Cir. 1966).

In view of the Court's determination of the question of enforceability under State licensing law on this motion to dismiss, it is unnecessary to reach Mitchell's alternative argument that, in the circumstances of this case, State licensing requirements are preempted by federal legislation.

The Court need pause only briefly in discussing plaintiff Terry's claim. In addition to the alleged arrangement for joint solicitation to which Terry was a party and the similar breach of fiduciary duty he claims, Terry alleges that he entered into a separate partnership agreement with the defendant Hart, Benvenga and Associates which was subsequently extended to specifically include the Post Office contract. In view of

the Court's disposition of defendants' motion in regard to Mitchell's claim, it is unnecessary at this stage of the litigation to reach the question of the independent validity of Terry's claim.

## II.

In an alternative prayer for relief, movants have asked that certain paragraphs of the amended complaint be stricken pursuant to Fed.R.Civ.P. 12(f). While the motion fails to enumerate the grounds upon which it is based, the memorandum of law in support of the motion indicates that the objections are to allegedly irrelevant and evidentiary matters contained in the amended complaint. The Court denies in all respects that part of defendants' motion which is made pursuant to Fed.R.Civ.P. 12(f) for the reasons hereinafter set forth.

Paragraph 7 of the amended complaint which reviews plaintiff Mitchell's professional background is objected to on the ground of relevancy. Paragraph 9 referring to certain statements allegedly made by defendant Hart, paragraph 17 dealing with alleged conversations between plaintiff Mitchell and the defendants, and paragraph 21 concerning an alleged loss of business opportunity of plaintiff Mitchell are objected to on the ground that they are evidentiary in character.

A motion to strike allegedly immaterial or impertinent matter from a pleading will not ordinarily be granted unless it is apparent that the matter sought to be stricken can have "no possible relation" to the matter in controversy. Brown & Williamson Tobacco Corp. v. United States, 201 F.2d 819, 822 (6th Cir. 1953). See also 2 Moore, Federal Practice ¶ 12.21[2] at 2317-2320 (2d ed. 1965). In view of the nature of the claim for relief stated, it cannot be said at this juncture that the professional background of plaintiff Mitchell can have no possible bearing on the issues raised.

 While Rule 12(f) does not explicitly authorize the striking of an allegation on the ground that it is of an evidentiary character, this objection will support a motion to strike under the requirement of simplicity in pleading contained in Rule 8(a). Such a motion ordinarily will not be granted, however, when the evidentiary facts pleaded provide for a better understanding of the claim asserted. Only when the narrative of evidence is tediously long or prejudicial, or the evidentiary details are inadmissible will the moving party be granted relief. See 1A Barron & Holtzoff, Fed.Prac. & Proc. § 367 at 475-477 (1960). Evaluating defendants' objections in light of these standards, the Court concludes that no useful purpose can be served by excising the questioned allegations at this time See Schulman v. Burlington Industries, Inc., 255 F. Supp. 847, 852 (S.D.N.Y.1966).

The motion is denied in all respects.

So ordered.