**BRUBRAD COMPANY, Plaintiff,**

**v.**

**UNITED STATES POSTAL SER-VICE, Defendant.**

**No. 75 C 325.**

United States District Court, E. D. New York.

Nov. 6, 1975.

Bradley B. Davis, New York City, for plaintiff.

David G. Trager, U. S. Atty., Brooklyn, N.Y., for defendant, by Richard L. Huffman, Asst. U. S. Atty., of counsel.

JUDD, District Judge.

## MEMORANDUM AND ORDER

Cross motions have been made for summary judgment by the plaintiff and to dismiss by the defendant.

### Facts

On November 4, 1964 plaintiff's predecessor, Brubrad Corporation, and the United States of America entered into a lease agreement for a store at 2934–36 Avenue X, Brooklyn, New York, to be used by the then Post Office Department. The lease was for an initial period of ten years at a rate of $510 per month, with four five-year renewals at the option of the defendant-tenant, at the rates of $475, $500, $525, and $550 per month, respectively. Plaintiff is a partnership.

The terms of the lease were reached after a process of public bidding and negotiation. The original bid submitted by Brubrad Corporation was for $545 per month, the lowest of three bids, but was accepted only after further negotiations which reduced the rent to $510.

Plaintiff's complaint asserts that since 1964 "the enormous rates of inflation and consequent declining value of the dollar" have been both unprecedented and uncontemplated by the parties. Plaintiff maintains that these economic developments have caused an "unfair hardship upon plaintiff" while unjustly enriching the defendant.

In affidavits supporting its motion for summary judgment, plaintiff asserts that the inflation and declining value of

the dollar have been caused, at least in part, by the affirmative acts of the federal government in pursuing its fiscal and monetary policies.

The complaint asks for judgment reforming the terms of the lease so that the rentals shall "be deemed to read as being in terms of 1964 dollars to be adjusted at the 1974 renewal period and each subsequent renewal period in accordance with the alteration in the value of the dollar from base year 1964. . . ." In its briefs and oral argument, however, plaintiff retreats from the claim of reformation of the lease and asserts instead a right to have the lease interpreted so as to make an adjustment for inflation.

Plaintiff suggests various standards by which the court might make such an adjustment. Plaintiff first points out that the redemption of silver certificates for silver bullion was terminated on June 24, 1968, 31 U.S.C. § 405a–3, and that the value of silver has increased from $1.29 per ounce to $4.58 per ounce since the lease was executed. In its memorandum of law, it includes tables to show that $510 a month is worth only about $120 in terms of gold, and that wholesale prices have risen more than 50% and construction costs more than 90% since 1967. On oral argument, counsel said that plaintiff was asking for damages from the date of the complaint at a rate of not more than $800 per month, but gave no explanation of how the $800 was computed. In its supplemental brief, plaintiff claims the right to damages based on the decrease in buying power of the dollar.

In the motion papers, plaintiff asked simply "that a hearing be conducted to determine the precise method of adjustment."

## Discussion

■ Defendant's motion to dismiss under F.R.Civ.P. 12(b) may be granted only if the complaint fails to state a claim upon which relief could be granted under any legal theory. *Mitchell v. Hart,* 41 F.R.D. 138 (S.D.N.Y.1966).

The court concludes that the complaint must be dismissed, whether viewed as an action for reformation of the contract or as a suit for a declaratory judgment construing the contract.

### Reformation

■■ The law of contracts permits the reformation of the express terms of a contract when the agreement between the parties is not accurately reflected in the express language of the contract, either through mutual mistake of the parties or fraud by one and mistake by the other. A.L.I., 2 *Restatement, Contracts* § 504; 3 Corbin, *Contracts* §§ 608, 614 (1960); 13 Williston, *Contracts*, 3d ed. §§ 1547–49. Reformation is intended only to enforce the objectives of the parties "according to their original agreement." *Mutual of Omaha Ins. Co. v. Russell,* 402 F.2d 339, 344 (10th Cir. 1968), *cert. denied,* 394 U.S. 973, 89 S. Ct. 1456, 22 L.Ed.2d 753 (1969).

■ Such is not the case here. Plaintiff has not suggested that the parties intended the words of the contract to be other than what they are. Nor does plaintiff's theory of the case rest on the notion that the parties reached an express agreement other than that reflected in the written contract.

The Supreme Court has held, moreover, that inflation is not a ground for escape from contract terms. *Columbus Ry. Power & Light Co. v. City of Columbus,* 249 U.S. 399, 414, 39 S.Ct. 349, 354, 63 L.Ed. 669 (1919).

### Change of Rent by Interpretation

Plaintiff's new theory, changing its complaint from one for reformation to one for change of rent by interpretation of the contract, is equally lacking in merit.

While plaintiff does not contend that the parties entered into an agreement on terms other than those in the lease, it argues that the meaning of those terms is different from the construction urged by the defendant. Plaintiff urges that

the meaning of the phrase "annual rental of Six thousand one hundred twenty . . . Dollars" in the 1964 ten-year lease meant that the rent should have a value each year (or at least in each renewal term) equivalent to the value of $6,120 in 1964. On the basis of plaintiff's contention at one point that the value of the dollar has declined by 75 percent or more since 1964, its construction of the lease would mean that the 1974 rental would exceed $24,000, or $2,000 per month, far in excess of the claim it made on the oral argument.

Plaintiff's contention might be disposed of summarily by simply stating that the meaning of the words used in the ten-year lease is so plain as to preclude any other interpretation. Such an approach is often adopted by courts in interpreting statutes as well as contracts. *See, e. g., Western Union Tel. Co. v. American Communications Ass'n,* 299 N.Y. 177, 86 N.E.2d 162 (1949); *Bethlehem Steel Co. v. Turner Construction Co.,* 2 N.Y.2d 456, 161 N.Y.S.2d 90, 141 N.E.2d 590 (1957); *Caminetti v. United States,* 242 U.S. 470, 485, 37 S. Ct. 192, 194, 61 L.Ed. 442 (1917).

There are occasions, however, where it is appropriate to go beyond the plain meaning of words in order to determine the underlying purpose of a statute or a contract. 3 Corbin, *Contracts* § 542 (1960); 9 Wigmore, *Evidence* § 2461 (3d ed.); *Massachusetts Bonding Ins. Co. v. United States,* 352 U.S. 128, 138, 77 S.Ct. 186, 191, 1 L.Ed. 2d 189 (1956) (Frankfurter, J., dissenting); *Guiseppi v. Walling,* 144 F.2d 608, 624 (2d Cir. 1944) (L. Hand, J., concurring).

The court in construing a provision of a contract should look to the contract in its entirety. In this regard, it is significant that the parties varied the rentals for the four five-year option periods following the initial ten-year lease. Presumably, these negotiated rentals looking to the future included the parties' estimation of the value of the lease, and of the dollar at those times. Given the conventional meaning of the term "dollar", as our basic unit of currency, it would seem fair to assume that, had the parties meant to set the rent in terms of "1964 dollars," they would have used words other than those they chose.

When construing a contract, the court may properly consider the circumstances of the parties at the time of negotiation and entering into the contract. Here there is no indication that the predecessors of plaintiff and defendant dealt in any fashion other than the proverbial "arm's length." While subsequent developments both in this country and abroad may have proved plaintiff's contract to be an unwise one, such misjudgment of the future, standing alone, does not justify altering the terms of the contract. This court does not understand plaintiff to contend, nor could it find, that this contract was unconscionable when made. *Cf.* U.C.C. § 2–302; *Jones v. Star Credit Corp.,* 59 Misc.2d 189, 298 N.Y.S.2d 264 (S.Ct. Nassau County, 1969).

Plaintiff cites 31 U.S.C. § 311, which states the policy of the United States, "to continue the use of both gold and silver as standard money. . . ." This section, however, has not been in force as to gold since 1934, when gold coins were withdrawn from circulation, 31 U.S.C. § 315b, and all inconsistent statutes were repealed. 31 U.S.C. § 446. As to silver coins, Section 311 has had no validity since the redemption of silver certificates was terminated in 1968. 31 U.S.C. § 405a–3.

The application of Section 311 to satisfaction of contract obligations is inconsistent in any event with 31 U.S.C. § 463, enacted in 1933, forty years after Section 311.

Section 463 reads:

"(a) Every provision contained in or made with respect to any obligation which purports to give the obligee a right to require payment in gold or a particular kind of coin or currency, or in an amount in money of the United

States measured thereby, is declared to be against public policy; and no such provision shall be contained in or made with respect to any obligation hereafter incurred. *Every obligation, heretofore or hereafter incurred, whether or not any such provision is contained therein or made with respect thereto, shall be discharged upon payment, dollar for dollar, in any coin or currency which at the time of payment is legal tender for public and private debts.* Any such provision contained in any law authorizing obligations to be issued by or under authority of the United States, is repealed, but the repeal of any such provision shall not invalidate any other provision or authority contained in such law." (Emphasis added).

Should this court accept plaintiff's proffered construction, it would in effect be giving the plaintiff the "right to require payment in . . . a particular kind of coin or currency, or in an amount of money of the United States measured thereby, . . .." To adopt such a construction would violate public policy as declared by Congress.

Section 463 was applied in *Avery v. J. L. Hudson Co.*, 17 Mich.App. 491, 169 N.W.2d 666 (Ct. of Apps.1969). In that case, the landlord sued to have the rent adjusted on a 99-year lease, made in 1912, which called for rent "of equal purchase power with the present monetary standard," but the court held that the clause was unenforceable by virtue of Section 463.

Plaintiff's reliance upon *Perry v. United States*, 294 U.S. 330, 55 S.Ct. 432, 79 L.Ed. 912 (1935), is unavailing. In *Perry*, the Court recognized that Congress could not *after the fact* repudiate a binding obligation previously entered into by it, to pay principal and interest on government bonds "in United States gold coin of the present standard of value." In the present case, the statute invalidating provisions such as that advanced by plaintiff was on the books long before the lease was signed. Plaintiff would distinguish the *Perry* case because in that case there had been no decrease in the dollar's purchasing power, and therefore no damages; but the loss in purchasing power since 1964 in this case creates no rights in plaintiff, in the light of the policy set forth in 31 U.S.C. § 463. Even if policies of the federal government have caused the current inflationary increase in prices, the policies were the result of Congress' exercise of its legislative powers under Article I, Section VIII of the Constitution, and give rise to no private rights.

It is also proper to consider the impact which acceptance of plaintiff's contentions would have on many other long-term government obligations. The New York Times of November 4, 1975, lists eleven series of United States government bonds with maturities from 1980 to 1998 and coupons from 3 percent to $4\frac{1}{4}$ percent. Their holders might make the same argument as plaintiff, that they did not contemplate the present inflation when the bonds were issued. Plaintiff, like bondholders and other creditors of the government, is entitled under 31 U.S.C. § 463 only to "payment, dollar for dollar, in . . . legal tender."

Cases cited by plaintiff about consideration of inflation in fixing damages for torts have no bearing on the amount of defendant's lease obligations.

The burdens of inflation do not rest alone on holders of long-term government obligations. Inflation has the effect of a capital levy on owners of many forms of property, and of an ungraduated income tax on all persons living on fixed incomes. Sorting out how much of inflation is attributable to deficit budgets to finance essential federal programs, how much results from oil price increases by OPEC countries, how much from uncontrolled collective bargaining agreements, and how much from other domestic and international causes, would be a fearsome task. A court should not, without Congressional guidance, single out a particular landlord or other victim

of inflation to be compensated at the expense of all the other taxpayers in the United States.

For all of the foregoing reasons it is

Ordered that the plaintiff's motion for summary judgment be denied, the defendant's motion to dismiss the complaint be granted, and the Clerk of Court enter judgment for the defendant.