Plaintiffs, a partnership, bring this action for recision or reformation of. a lease of real property to the United States Government. While count 1 does not specifically claim money damages, other counts do and we assume the claim is sufficiently one for money. The parties agreed that occupancy began November 15, 1962. Presumably the leased building was constructed in the intervening year after the lease date, October 10, 1961. The property is in Phoenix, Arizona, used for offices, laboratories, and storage. The original lessor was Louis Lessor Enterprises, Inc., a Delaware Corporation with its place of business in Beverly Hills, California. The original rental (since slightly increased by agreement) on the lease date was $125,308 per annum, which by reference to 40 U.S.C. § 278a would indicate an appraised value of not under $835,533 by this court’s mathematics. The lease refers to that statute and provides for reduction in case the rental exceeds the allowable 15 percent. The lessor was to heat and provide other necessary services, including power for air conditioning. The lease ran for 10 years with options for two 5-year renewals, which have been exercised.
At some time the property devolved upon a financial institution, Banker’s Life Company, which on July 1,1975, sold the same to the present plaintiffs at a purchase price of $206,000. The plaintiffs allege that to furnish the required *520 services they expended over rentals received, $26,608 in 1976, $35,751 in 1977, and $37,056 in 1978. More recently they have refused to provide the services and defendant has filed a counterclaim for the cost of providing them itself.
In 1977 defendant purported to exercise its final right to extend the lease. The notice should have been given 120 days before November 15, 1977. It was mailed June 2, 1977, and was defective in misstating the number of the lease. Plaintiffs say it was also addressed and mailed to the wrong party. However, plaintiffs received the notice and knew what was intended. They did not at first state that the notice was legally defective, but did so only within 120 days of November 15, 1977. Now they contend that defendant has been only a tenant at sufferance since November 15, 1977. However, defendant refuses to vacate.
Plaintiffs anticipate that pursuant to an option in the lease, defendant will be able to purchase the premises at 20 percent of fair market value on November 15, 1982. The lease provides that at the end of 20 years of occupancy, defendant can purchase for the fair market value of the land plus one dollar for the improvements. The price for improvements diminished as the years passed reaching the dollar figure only at the end.
Plaintiffs seek relief in four counts. Their basic theories are that either the lease expired November 15, 1977, for lack of any valid extension, or else plaintiffs are entitled to equitable recision because performance according to the lease terms has become commercially impracticable. Defendant says that the doctrine of commercial impracticability has no application to a situation where, as here, hardship results primarily from a debasement in value of the currency in which the deal was stated by the parties. Defendant moves for summary judgment, called by it partial, but dispositive of everything except the quantum to be awarded on the counterclaim.
The defective notice issue can be speedily disposed of. A party seeking help in equity is in no position to argue that a clear and unambiguous actual notice is defective as a legal notice. The notice is hereby reformed to eliminate the errors and make it state what the parties understood and still understand it intended to state. Plaintiffs’ conduct in *521 deferring any complaint about the sufficiency of the notice for over 2 months after receipt, until within the 120 days before November 15, 1977, was grossly inequitable and ample ground for a holding of laches and estoppel, should one be required.
The commercial impractibility issue need hardly take more discussion if the court sticks to established precedent. The usual rule is that a party agreeing to a contract price fixed in money terms, without escalation, assumes the risk of any cost change that makes the deal a losing one., Martin v. Vector Co., 498 F.2d 16 (1st Cir. 1974), and see other authority cited therein. The defendant also cites authority dealing with the specific situation of the long-term government lease. Bruhrad Co. v. United States Postal Service, 404 F.Supp. 691 (E.D.N.Y. 1975), aff'd without op., 538 F.2d 308 (2nd Cir.), cert. denied, 429 U.S. 834 (1976). Defendant also cites and furnishes a copy of an unreported decision to the same effect, Arlington Alliance, Ltd. v. GSA No. 79-1614 (4th Cir., decided Nov. 26, 1980). We presume this decision could not be cited to the Fourth Circuit itself because of the usual local rule about citing unreported decisions, but the Fourth Circuit lacks the power to prevent its decisions being cited elsewhere. Plaintiff asserts rather weakly that it is entitled to relief because the injury results from the defendant’s own acts in debasing its currency. So far as the inflation results from defendant’s own decisions (and those of others of course have played a part), the debasement in purchasing power is a "sovereign act” not imputable to the GSA as contracting agency. D.R. Smalley & Sons v. United States, 178 Ct.Cl. 593, 372 F.2d 505, cert. denied, 389 U.S. 835 (1967).
We need not say, however, to dispose of this case, that equitable relief is never to be available to relieve a lessor or other long-term contractor of the consequences of inflation, should it continue to rage out- of control. To say this would be to establish a precedent that needlessly would tie the hands of our successors. It may be that courts will eventually have to fashion something along the lines of equitable relief. It is sufficient to say this is not the case in which to establish so novel a precedent, because the claim of these plaintiffs wants equity.
*522 It is not asserted that either Mr. or Mrs. Tell had any interest in the property before 1975. They then bought in at $206,000, less than twice the original annual rental. It is reasonable to suppose, and no suggestion is made to the contrary, that the price reflected the weight of the lease and option as a burden on the owners. Certainly inflation had already had a substantial impact, and skepticism was widespread whether defendant would ever be able to bring it under control. The lease has since become still more burdensome, but it would be impossible to say to what extent this was foreseen and bargained for, or at least foreseeable. On the other hand, defendant contracted in 1962 for an equity that would grow with the passage of time, as the option price for the improvements diminished towards one dollar, the latter a modest sum even in 1962. The plaintiffs would have us destroy defendant’s equity which it contracted for, in order to protect plaintiffs, who could and so far as appears, did bargain for such protection in their purchase price in 1975. Should the original 1962 lessor be before this court as plaintiffs, the case would be entirely different.
Accordingly, upon the briefs and record, without oral argument, the plaintiffs are determined to have no cause of action. The petition will be dismissed as soon as the counterclaim is adjudicated.